## The Mayor and Aldermen of Mobile v. Yuille.

3  137
95  526

1. A power granted to the corporation of the city of Mobile, " to license bakers, and regulate the weight and price of bread, and prohibit the baking for sale, except by those licensed," is not contrary to the constitution of the State.
2. A by-law made pursuant thereto, may be enforced by a reasonable penalty,—to be judged of by all the circumstances of the case.
3. A penalty, to be reasonable, must be certain; a penalty, therefore, that the offender shall pay a fine not exceeding fifty dollars, to be recovered before the Mayor, &c, is void for uncertainty.
4. Whether the penalty of a by-law, which condemns to forfeiture such bread as is of less weight than the ordinance requires and exacts from the baker, as the price of his license, a sum beyond what may be necessary to compensate for issuing and registering it, can be supported—*Quere.*

Error to the County Court of Mobile.

This was a case agreed. The facts presented on the record are that the defendant in error is a baker in the city of Mobile; that a quantity of bread made by him for sale was condemned for being of less weight than required by the proclamation of the Mayor, made according to the ordinance of the Mayor and Aldermen—and fined twenty dollars. From this judgment he appealed to the County Court, which reversed the judgment of the Recorder, from which the Mayor and Aldermen prosecute this writ of error.

The ordinance of the city, relating to the assize of bread, passed the 28th of January, 1826, is part of the agreed case. The 1st section provides, that no one shall carry on the business of a baker of loaf bread within the city, without obtaining a license therefor, for which he shall pay the sum of twenty dollars, and one dollar to the clerk, for issuing the same, and for carrying on the business of baking bread in the city without such license, a fine, not exceeding fifty dollars, is imposed.

The 2d section requires all bread to be made of good and wholesome flour, and of such weight, as shall be from time to time prescribed; the loaves to be of the value of 12 1-2 and 6 1-4 cents.

Section 3d, requires all bread to be marked with the initials

of the baker's name, or in some other manner, to designate it with the price of the loaf marked thereon.

Section 4th, requires the police constables to inspect bread and to sieze all such as shall be deficient in quantity or quality, and convey the same to the Mayor's office, who shall condemn it for the poor, and may also fine the offender in a sum not exceeding fifty dollars. A second offence forfeits the license.

The 5th section, prescribes the weight of bread, on a graduated scale, according to the price of flour, and requires the Mayor to issue his proclamation as often as a change in the price of flour produces an alteration in the weight of the bread.

Mr. CAMPBELL, for the Corporation, submitted the case without argument, and cited 7 Cowen, 33. 585, 12 Pickering 184; 7 Conn.; 1 Strange, 466; 1 Salk, 143; Chamberlain of London, 5 Coke.

B. F. PORTER, for defendant in error, contended :

1. The Legislature itself has no power to impose this restriction. All power which the Legislature can exercise, must be derived; 1st, from the constitution of Alabama, in direct terms; 2, from an admitted extraordinary power, to enact laws for the general good, not forbidden in the constitution—7 Porter's R. 293, 295, 296 ; 9 Dana, 516. 517 ; 5 ib. 31, 33 ; 3 Wheeler's C. L. 244; 10 Wendell, 99 ; 2 Com. Dig. 284, 290 ; 5 Cowen, 465; 8 Johns. R. 418; 1 Cowp. 269; 5 Cowen, 462; 1 Dana, 460; 1 Wilson 233 ; 1 Lord Ray. 499; 7 D. & E. 543; 3 Salk. 76—ib. 77; 12 Modern, 686, 687; Latch. 546 ; 1 Burrows, 16 ; 8 East. 185 ; 8 Coke, 129; Croke Eliz. 893; 1 Wm. Blacks. 372; 4 Burr. 1921; 10 Co. 31; Hob. 211; Carth. 482; 5 Mod. 439; Willes, 384; 3 Burr. 1856, 1859; 3 Salk. 193; 3 Burr. 1847; 3 Wheeler's C. L. 244, 245, 248, 249, 250, 254 ; 3 Inst. 81; 3 Burr. 1862 ; 4 Black. 159 ; 1 Hawk. P. C. 231; 1 Burr. 14; 5 Cowen, 452; 3 Burr. 1862; Puffend. b. 8 ch. 5; Vattel, b. 1, ch. 20, sec. 246; Dana, 516; 9 ib. 517; 5 ib. 31; 1 Burr. 14. 16, 17.

2d. The Legislature, if it hath such power, cannot delegate it. It is a sovereign power, if any. The Legislature can delegate to individuals a right to do particular acts, power to do which themselves, is incident to sovereignty. These last may

be carried out by its own officers, but cannot be vested in the discretion of others: (1 Dana, 459; 3 Salk. 76.)

3. When a power can be exercised and delegated, it must be strictly pursued. Here, the power granted is to license. The demand of a license closes the power; and the price of the license is all the corporation can recover. 2. Const. R. of So. Car. 726; 1 Bay, 46, 382; 5 Cowen, 465; 4 Burr. 2204; 4 Inst. 49; 2 Cranch, 127; 2 Johns, 109, 115; 5 Porter 279.

ORMOND, J.—The question presented on the record is, whether the Corporation of the city of Mobile had authority to pass the ordinance regulating the assize of bread.

The power to make by-laws is incident to every corporation, and it is therefore unnecessary to confer the power by express grant in the charter. If the validity of a by-law is questioned, the test is whether it is reasonable and consonant to the general law of the State. By an act of the Legislature, passed 17th December, 1819, the inhabitants of the city of Mobile, were incorporated.

The 7th section confers the power to make all necessary police regulations, and to pass all by-laws necessary for the government of the city; " to license bakers and regulate the weight and price of bread, and prohibit the baking for sale except by those licensed :" Toulmin's Digest, 787. The question then is, whether the Legislature had power to authorize the corporation to make such a by-law, and whether the power so conferred has been pursued.

It is strenuously contended by the counsel for the defendant in error, that no such power exists, because, as he contends, it would interfere with the right of the citizen to pursue his lawful trade or calling in the mode his judgment might dictate. Doubtless, under the form of government, which exists in this and the other States of this Union, the enjoyment of all the rights of property, and the utmost freedom of action which may consist with the public welfare, is guarantied to every man, and no restraint can be lawfully imposed by the Legislature in relation thereto, which the paramount claims of the community do not demand, or which does not operate alike on all. Free government does not imply unrestrained liberty on the part of the citizen, but the privilege of being governed by

laws which operate alike on all. It is not therefore, to be supposed, that in any country, however free, individual action cannot be restrained, or the mode, or manner of enjoying property, regulated.

The decision of this Court, in the matter of J. L. Dorsey, (7 Porter, 295,) has been referred to, as sustaining the position that the act is unconstitutional. But the ground upon which the law in that case was held to be void, was not that the Legislature could not regulate the matter and provide for the licensing attorneys at law, but because the act was partial, and did not operate alike on all the citizens of the State. Thus, Judge GOLDTHWAITE holds this language: "As the constitution is silent with respect to the pursuits of business or pleasure, the General Assembly has the power to prescribe any qualification not inconsistent with the rule that equality of right, must be preserved. In other words, that any citizen may lawfully do what is permitted to any other. It rests with the legislative power, to prescribe the conditions on which any avocation or calling shall be pursued, so that the door is closed to none: and there seems to be no other limit to their discretion, than the one which arises from the first section of the bill of rights referred to:"—361 2, 7 Porter.

There is no motive, however, for this interference on the part of the Legislature with the lawful actions of individuals or the mode in which private property shall be enjoyed, unless such calling affects the public interest, or private property is employed in a manner which directly affects the body of the people.

Upon this principle, in this State, tavern keepers are licensed and required to enter into bond, with surety, that they will provide suitable food and lodgings for their guests, and stabling and provender for their horses; and the County Court is required, at least once a year to settle the rates of inn keepers. Upon the same principle, is founded the control which the Legislature has always exercised in the establishment and regulation of mills, ferries, bridges, turnpike roads and other kindred subjects. So, also, all quarantine and other sanatory regulations, all laws requiring houses to be built in cities of a certain material, to guard against fire, depend for their validity on the same principle.

It has been strongly urged that this by-law is in restraint of trade, and therefore void by the common law. A contract of an individual, not to exercise a particular trade or calling in the kingdom, is void, but if on sufficient consideration, is good, if confined to a particular place; so a by-law restraining trade generally, is bad, but if made for the *regulation of trade in a particular place, is good*. For proof of which, a number of instances are given by Chief Baron Comyn, in his Digest, (2 vol. 286, by-law, B. 3.) and among them is, " that such a baker bake white bread only, such an one, brown." The rule and the reason of it, are laid down with great perspicuity in the great case of Mitchell v. Reynolds, (2 P. Williams, 181,) by Lord Macclesfield. "All by-laws made to cramp trade in general, are void. By-laws made to restrain trade in order to the better goverument of it, are good in some cases, viz : if they are for the benefit of the place, and to avoid public inconveniences, nuisances, &c. or for the advantage of the trade and improvement of the commodity." The learned Judge afterwards shows that this modified restraint is consistent with *Magna Charta*. See also the following cases in which such regulations have been held good. Fugakerly v. Wellshm, 1 Strange, 463; King v. The Chamberlane of London, 3 Burrows, 1322; Wennell v. Chamb. of the city of London, 1 Stra. 675; Pierce v. Batrum, Cowp. 269. The Master Wardens, &c. v. Fell, Willes' Rep. 384.

The sum of these authorities is that though there can be no general restraint of trade, yet to a certain extent it may be regulated, and by consequence to some extent restrained in a particular place, if such restraint be for the good of the inhabitants, as when for the prevention of nuisances, certain trades are confined to the suburbs of a city, or where it is for the advantage of the trade and improvement of the commodity.

The regulation in this case seems to combine all these qualities. Where a great number of persons are collected together in a town or city, a regular supply of wholesome bread is a matter of the utmost importance ; and whatever doubts may have been thrown over the question by the theories of political economists, it would seem that experience has shewn that this great end is better secured by licensing a sufficient number of bakers and by an assize of bread, than by leaving it to the vol-

untary acts of individuals. By this means a constant supply is obtained without that fluctuation in quantity which would be the inevitable result of throwing the trade entirely open, and the consequent rise in price, when from accident or design a sufficient supply was not produced. The interest of the city in always having an abundant supply will be a sufficient guaranty against any abuse of the right to regulate the weight, the consequence of which would be to drive the baker from the trade.

The case of Dunham & Daniels v. The Village of Rochester, 5 Cowen 462, was considered by the counsel for the defendant in error as conclusive in his favor. The by-law of the town of Rochester, which was called in question in that case, assessed a tax of from five to thirty dollars for a license from all grocers, hucksters, &c., and imposed a penalty for selling without such license. The action was for the penalty for selling without license. The charter of the town authorized the trustees, &c. "To make all such prudential by-laws, rules and regulations as they from time to time, may deem meet and proper, and particularly such as are relative to the public market, &c. &c. relative to taverns, gin shops and *huckster shops* in said village."

The Court held this by-law to be bad on the ground that the authority of the corporation was not to pass what laws they pleased, but such as were *prudential.* The Court say, "admitting the power to limit or prohibit altogether, the erection of huckster or gin-shops, if required by prudence for the good of the corporation, it is not shewn how they could be an evil if conducted under proper regulations, *nor can we see judicially, that any restriction was necessary.* For all the purposes of jurisdiction, corporations are like the inferior Courts, and must shew the power given them in every case."

It appears from these extracts, very conclusively, that the decision of the Court proceeded on the ground, that the by-law in question was void from an excess of authority,—that it did not judicially appear that it was a *prudential regulation.* But in this case, the power is expressly given by the statute to do the act complained of, and in the case just cited from 5 Cowen, it appears that the Trustees of the town of Rochester, were authorised by the act of incorporation, to pass by-laws regulat-

ing the assize of bread; and are prohibited from fixing the price of any commodity or articles of provision, except the *article of bread*, that may be offered for sale.

The legislature having full power to pass such laws as is deemed necessary for the public good, their acts cannot be impeached on the ground, that they are unwise, or not in accordance with just and enlightened views of political economy, as understood at the present day. The laws against usury, and quarantine, and other sanatory regulations, are by many considered as most vexatious and improper restraints on trade and commerce, but so long as they remain in force, must be enforced by Courts of justice; arguments against their policy must be addressed to the legislative department of the government.

If, however, such an inquiry were open, it would be very difficult to satisfy this court, that the *assize of bread* in a populous city or town, is an unwise regulation. The practice has prevailed too long, and has been too generally, not to say, almost universally acquiesced in, and continued, to permit us to doubt, that some regulation on this interesting subject, is necessary and proper.

It is also insisted, that admitting the legislature to possess the power, it cannot be delegated to a corporation. We have seen that the mere creation of a corporation, carries with it the power to make all by-laws, which are reasonable and not contrary to the general law of the State; it is also true, that an express grant to pass an unreasonable or unlawful by-law, is void; it follows, therefore, most conclusively, that the legislature may grant expressly the power to do that which the corporation might do without express grant. The test of the *by-law* being the same in either case. Wilcock on Corporations, 96. As, however, *by-laws* are the rules of action which the inhabitants of a place prescribe for their own government, there is a peculiar propriety in permitting them to be the judges of what rules are necessary and proper, and such is the constant, the invariable practice.

Finally, it is urged, that there is no power given by the act of incorporation, to inflict a penalty for the violation of the by-law. The right to make laws, necessarily implies the power of enforcing the law by some sanction, otherwise the power would

be nugatary. The supreme legislative power of a State, are the exclusive judges of the penal sanction of a law, but the penalty for the violation of a by-law, must like the by-law itself, be reasonable. The penalty in this ordinance under consideration, is not more than fifty dollars, to be recovered before the Mayor, or any one of the Aldermen; one half to the use of the city, and the other to the use of the person procuring the conviction.

What would be a reasonable penalty, cannot, from the nature of the thing, admit of a general rule, applicable to all cases, but must in every case, be determined by the nature of the offence intended to be prohibited. Some general rules, however, may be laid down as applicable to all cases. The penalty must be a sum certain, and cannot be left to the arbitrary assessment of the corporation court, to be determined according to the nature of the offence. It is also said, that although the utmost limit of the penalty be fixed beyond which the fine cannot extend, that it does not remove the objection. The reason assigned is, that it permits the corporation to be a judge in its own cause. Nor, it is said, can the penalty of a by-law extend to forfeiture of goods, unless such power be expressly given by the charter. See the cases collected by Angel and Ames on Corporations, 200; and by Wilcock on Municipal Corporations, 152, sec. 308.

The by-law in this case being not for a sum certain, but for such sum not exceeding fifty dollars, as the corporation court might think proper to impose as a fine, cannot be supported.

We also incline to doubt the propriety of that portion of the by-law which forfeits such bread as is not of the weight required by the ordinance, as also that portion which requires twenty dollars to be paid by the baker as a license, unless the latter can be supported under the taxing power of the corporation. Though doubtless the corporation could require a fee for the issuance and registration of the license.

From this view of the case. it follows that the County Court did not err in its judgment, reversing the judgment of the recorder, and it is therefore affirmed.