[Cousins *v*. State.]

# Cousins *v*. The State.

*Indictment against Attorney-at-law, for Violation of Revenue Law.*

1. *Sufficiency of indictment in alleging offence.* — In an indictment against an at-·torney-at-law, under the 111th section of the revenue law of 1868, for practising his profession without a revenue license, an averment that he " violated the provisions of " said law, " in this, that he *practised* the profession of law, for the practice or carrying on of which a license is by law required to be taken out, without having paid for and taken out said license," is sufficient on demurrer; and it is not necessary that the indictment should state the price of the required license.

2. *Constitutionality of revenue law, in requiring license to be taken out by lawyers, and punishing failure as misdemeanor.* — The legislature has the undoubted right to require lawyers, as well as persons engaged in any other profession, occupation, or business, to take out a revenue license, and to make the engaging in any such profession or business, without first taking out the required license, punishable as a misdemeanor by fine and imprisonment. (SAFFOLD, J., dissenting, held that, since imprisonment for debt was prohibited by the Constitution, a person who violated the provisions of the law, by failing to take out a license, could not be punished by imprisonment, though the amount of the license might be collected by execution.)

FROM the Circuit Court of Elmore.

Tried before the Hon. JAS. Q. SMITH.

The indictment in this case was in these words: —

" The grand jury of said county charge, that, before the finding of this indictment, P. F. Cousins violated the provisions of an act of the General Assembly of the State of Alabama, entitled ' An act to establish revenue laws for the State of Alabama,' approved December 31, 1868, the 111th section of which said act is in the figures and letters as follows, to wit: '*Be it further enacted*, that any person who, after the third Monday in March, 1869, shall be engaged in or carry on any business or profession, or do any act, for the doing, prosecuting, or carrying on of which a license, is by law required to be taken out, without having paid for and taken out such license, shall be deemed guilty of a misdemeanor, and shall be fined three times the amount of such license, and may be confined in the county jail, not exceeding one year, at the discretion of the court,' — in this, that he practised the profession of law, for the practice or carrying on of which a license is by law required to be taken out, without having paid for and taken out said license ; against the peace and dignity," &c.

The defendant demurred to this indictment, assigning the following as causes of demurrer: 1st, " that it is not shown in said indictment that the defendant was engaged in the business of practising law, and that only one act of practising is charged in said indictment ; " 2d, " that the amount of the license required to be paid to the State, and to the county, is not set forth in the indictment ; " 3d, " that the law set forth in said indictment, so far as it applies to lawyers, is unconstitutional and void, and for these reasons the indictment does not charge

any offence." The court overruled the demurrer ; and the defendant refusing to plead over, a jury was thereupon empanelled and sworn, who returned a verdict of guilty, and assessed a fine of thirty dollars against him. The court thereupon rendered judgment against him, for the amount of the fine, with costs ; and this judgment, together with the overruling of his demurrer to the indictment, he now assigns as error.

THOS. H. WATTS, for the defendant.

BEN. GARDNER, Attorney General, for the State.

PETERS, C. J. — The indictment is in the form prescribed in the Code. It sets out an act which the law forbids, with such precision and formality as will enable the accused to controvert it by a formal and intelligible issue. This has been repeatedly settled by this court to be sufficient. The first special cause of demurrer is not sustained by the record. To " engage in " a thing does not necessarily require a continuance of the engagement : one act is enough. To engage in the practice of law in a single instance, without a license, is forbidden by law. Pamphlet Acts 1868, pp. 329–30, §§ 105, 111. The first ground of demurrer, then, is insufficient. And the second ground is equally unavailing. It is not necessary for the indictment to allege the price of the license. This is not a constituent of the offence. The offence is to engage in, or to carry on, the practice of law without a license ; and this is alleged in the indictment.

2. The third objection urged in the demurrer is also untenable. Since the decision of the case of the *Mayor & Aldermen of Mobile* v. *Yuille* (3 Ala. 137), it has not been seriously doubted, in this State, that the general assembly has power to raise revenue by license on the business and occupations of the people. In that case, Judge ORMOND declares : " The decision of this court in the matter of J. L. Dorsey, 7 Porter, 295, has been referred to, as sustaining the position that the act is unconstitutional. But the ground upon which the law in that case was held to be void, was not that the legislature could not regulate the matter, and provide for the licensing attorneys-at-law, but because the act was partial, and did not operate alike on all the citizens of the State. Thus, Judge GOLDTHWAITE holds this language : 'As the Constitution is silent with respect to the pursuits of business or pleasure, the general assembly has the power to prescribe any qualification, not inconsistent with the rule that equality of right must be preserved ; in other words, that any citizen may lawfully do what is permitted to any other. It rests with the legislative power to prescribe the

[Cousins *v.* State.]

conditions on which any avocation or calling shall be pursued, so that the door is closed to none ; and there seems to be no other limit to their discretion, than the one which arises from the first section of the bill of rights referred to.' " 3 Ala. 140.

In the case above cited, Yuille was a baker in the city of Mobile, and he violated an ordinance of the city government, controlling the weight of his bread sold to citizens of the city. He was sued under the ordinance, and fined twenty dollars ; and he appealed from that judgment to this court. Here, the chief question discussed was, the power of the general assembly to control and prescribe the conditions on which any avocation or calling shall be pursued ; and it was settled, that this power is. absolute, if the control exercised is imposed on all alike. This: was in 1841. Since that time, this power has been constantly· exercised. Under the present revenue laws, the occupations. which are regulated by a license are between thirty and forty in number. Pamphlet Acts 1868, pp. 330–33, §§ 112, 114, 115. If the power fails as to one occupation, it fails as to all. This. has never been seriously contended since the decision in the· case of Yuille, above quoted.

But it is contended, that the lawyer alone is exempted from this power of regulation by the general assembly. This ex-· emption he derives from the privilege to practise his profession at all, dependent upon his license as an attorney-at-law. In the technical sense of the word, the sense in which it is used in the statute, he is no lawyer without a lawyer's license to confer that privilege upon him. The license of an attorney-at-law creates his occupation simply. If he does not engage in its practice, he is not bound to pay the license demanded by the statute. If he does, then he must do so under the law which prescribes the conditions upon which the occupation may be engaged in, or carried on. There is nothing particularly sacred· in the profession or business of a lawyer, which puts him above· the legislative power to place on his shoulders his just share of· the necessary burdens of the State. If his share of this particular burden is unequal, and he complains of it for this reason, it will be removed ; but, without this, he has no more right to avoid his duty, than the tobacco dealer, the peddler, or the citizen who publishes a newspaper, or bakes bread. The right to regulate the property and the avocations of its citizens by the State is sovereign, and it should neither be abrogated nor abandoned.

It is the sacred duty of the citizen to obey the laws of the State. A failure or refusal to do this is " against the peace and dignity of the State." It is a defiance of the sovereign power. Such conduct has all the elements of crime, if wilfully adhered to ; and this justifies the State in classing it with misdemean-

ors.   There can be, I think, no doubt of the authority of the State so to treat it, and to enforce obedience by indictment and the infliction of penalties by way of punishment.   That has been done in this case.   When the grade of punishment is fixed by law, the courts can neither fall below it, nor transcend it. 47 Ala. 47.

The punishment in this case is a fine three times the value of the license required by law, and the court should inflict it. In this prosecution, the fine was sixty dollars, under the act of December 31, 1868, which fixed the price of the license at twenty dollars.   But this clause of the act has been since repealed, and the price of a license is now ten dollars.   Pamphlet Acts 1870–71, p. 7.   This would make the fine thirty dollars, which was the amount of the fine imposed in the court below. This was correct.        The judgment is, therefore, affirmed.

B. F. SAFFOLD, J. (dissenting.) — The authority of the legislature to tax occupations has been maintained in repeated judicial decisions, both state and federal, and by almost universal practice.   The right to engage in any useful and necessary pursuit is above all human constitutions and laws, which are instituted especially for its protection.   This duty of protection involves authority in the government to regulate the engaging in, and carrying on, any business, when necessary ; and to prohibit altogether such as prove to be hurtful.   Of course, the exercise of this power must be by " due course of law," or according to the " law of the land."

The practice of law is, by the general concurrence of governments, deemed such a one as is necessary to be regulated by the grant of a license, or privilege, to carry it on.   When such license is once granted, it cannot be withdrawn without cause given by the party receiving it.   This license is not the grant of any exclusive privilege, for such would be in violation of our State Constitution.   It is the means adopted by the State to protect society generally, which is deemed unnecessary in respect to such pursuits as agriculture, mechanics, and the like. Therefore, the lawyer cannot claim any exemption from taxation of his occupation, on account of his license, not enjoyed by those above mentioned.

But a license, under the revenue law, to carry on a business, not being the subject of the mala prohibita, is purely a tax, the failure to pay which is no more than the failure to pay a debt. There is no indication of any attempt to regulate the business, or of any necessity for so doing.   No more is required of the citizen than simply to pay the price affixed.   If the license is only a tax, its payment may be enforced by a sale of the delinquent's property.   A judgment in the nature of a pecuniary

penalty may be recovered against him. But he cannot be imprisoned, under our Constitution, forbidding imprisonment for debt.

Blackstone, speaking of the effect of imposts out of proportion to the value of the article, says it gives rise to smuggling, " and its natural and most reasonable punishment, viz., confiscation of the commodity, is, in such cases, quite ineffectual," on account of the lucrative employment. " Recourse must, therefore, be had to extraordinary punishments to prevent it, perhaps even to capital ones, which destroys all proportion of punishment, and puts murderers upon an equal footing with such as are really guilty of no natural, but merely a positive offence." 4 Bl. Com. 318.

If smuggling, which is an active evasion of revenue laws, is properly punishable only by confiscation of the goods, because personal punishment would confound it with murder and other atrocious crimes, what shall be said of imprisoning the person because of the non-payment, from inability to do so, of a *valuation*, *assessment*, or *due placed* on him, for the support of the government. Cooley says, " the (revenue) licenses give no authority, and are mere receipts for taxes." Cooley's Const. Lim. pp. 584, 496; *License Cases*, 5 How. 632; *Meeker* v. *Van Rensselear*, 15 Wend. 397. There is no element of offence, or misdemeanor, in the mere omission or failure to pay a tax to the government. Evil intention is an essential ingredient of crime. It does not appear in simple delinquency of tax-paying. The government wants the person's money, not his liberty. The Constitution says there shall be no imprisonment for debt.

I except from this reasoning those pursuits which, for substantial reasons, public sentiment consents to regard as of evil tendency, such as selling intoxicating liquors, and the like.