## THE TEXAS BANKING & INSURANCE CO. v. THE STATE.

1. OCCUPATION TAX—ASSESSMENT. Under the tax law (Paschal's Digest, 7660) imposing occupation taxes, no formal assessment was necessary; and if the tax was not paid before the party liable to such tax entered upon the business *taxed*, it was the duty of the officer charged with collection of such tax to enforce its payment.

2. SUIT FOR OCCUPATION TAX. In absence of Legislative provision for the collection of such tax otherwise, the collector can collect by suit.

3. CONSTITUTIONALITY OF OCCUPATION TAX. The constitutional limitation, that "taxation shall be equal and uniform throughout the State," is not violated by the Act of April 22, 1871 (Paschal's Digest, 7660), imposing an occupation tax upon every person or firm dealing in stocks or bills of exchange, in any city or town exceeding five thousand in population, an annual tax of two hundred and fifty dollars, and upon such occupation, in a city or town of less population, fifty dollars.

MAY 23, 1874, proceedings were taken in the name of the State by suit against the Texas Banking and Insurance Company, a corporation having its principal office in the city of Galveston, and pursuing the business and occupation of dealing in stocks and bills of exchange in the city of Galveston, a city containing more than five thousand inhabitants.

It was alleged that defendant pursued its business or occupation in the city of Galveston continuously from October 1, 1872, to June 3, 1873, upon which it was claimed that one hundred and fifty-six dollars and interest from October 1, 1872, was due as an occupation tax, under an Act entitled "An Act "to give effect to the several provisions of the Constitution "concerning taxes," approved April 21, 1871; that the occupation tax imposed thereby was two hundred and fifty dollars per annum in said city, it having over five thousand inhabitants.

The defendant urged that the law was repealed, was unconstitutional, and plead general denial.

Jury was waived and judgment rendered for plaintiff, and defendant appealed.

On the trial, plaintiff introduced a witness who was not a justice of the peace nor an assessor of taxes, and who testified that defendant, during the time charged in the petition, engaged in the occupation charged in the petition, in the city of Galveston.

It was proved that the city of Galveston, at the 1st October, 1872, contained more than five thousand inhabitants, and was situated in Galveston county.

Plaintiff did not offer in evidence any assessment roll made out by any justice of the peace as an assessor of taxes, and containing the name and occupation of defendant, and the amount of his occupation tax, or the names and occupations of any persons pursuing occupations, and the amount of their tax, and did not account for the absence of such assessment roll; no assessment of occupation taxes, nor of persons pursuing occupations in Galveston county, ever having been made by the assessor of taxes.

*L. E. Trezevant,* for appellant.

*Walter Gresham,* for State.

Moore, J. The first ground urged for a reversal of the judgment which need be considered, is, that the tax for which appellant is sued has never been assessed against him by a justice of the peace.

It is undoubtedly a pre-requisite to the collection of an *ad valorem* tax upon property, that it shall be assessed by the justice of the precinct in which it belongs. But the tax for which this suit is brought is not a tax upon property, which the Constitution (Article 12, Section 28) says shall be assessed by justices of the peace, under such laws as shall be provided and enacted by the Legislature. It is a direct, specific tax upon the person pursuing the occupation, trade, or business in which it is alleged the party charged with it is engaged, and by reason of which the tax is demanded. The assessment of such a tax by a justice of the peace is required neither by the letter nor spirit

of the Constitution. The main and essential object intended to be secured by the constitutional requirement that " the jus- " tices of the peace shall assess the property in their respective " precincts," is, unquestionably, to ascertain the value of the property liable for the tax, and to fix and determine the just proportion of it which should be demanded and collected from the property or its owner. This purpose, evidently, has no application to a specific tax upon an occupation, trade, or profession. The amount of liability of the parties chargeable with it does not depend upon an apportionment. Its limit is fixed and determined by the law making the levy. It can neither be increased nor diminished by an assessment. If, indeed, such a tax is in any sense the subject of assessment, certainly it is not so within the meaning of the Constitution providing for the assessment of property by justices of the peace. All that could be done in any way partaking of the nature of an assessment, would be the entry of the parties' names and the amount of the levy upon a tax roll. This would be to make a list of parties liable to the tax, but, in no proper sense of the word as used in the Constitution would it be an assessment of the tax. If such a list or roll must be made before payment of the tax can be enforced, it is by reason of the statute, and may be made by any one authorized to make it as well as a justice of the peace. In other words, if this tax is properly levied, it is only necessary to look to the statute regulating its collection, and not to the constitutional provision in respect to assessment, to determine whether the suit for it can be maintained.

An inspection of the law by which it was levied, will show that no assessment or enrollment of the parties chargeable with it, on any tax roll or list, was provided for, or required. (Paschal's Digest, Article 7660.) It was evidently intended by the Legislature that the tax should be paid, by the parties desiring to pursue any occupation upon which a tax was levied, before commencing such occupation. If this was not done, parties who engaged in such occupations became liable for the tax, and it was the duty of the officer charged with its collection to take

the necessary steps to enforce its payment. And in the absence of anything in the statute to indicate a legislative purpose that resort should be had to any other means to effect its collection, his right to sue for it, in the name of the State, cannot be controverted. (The State *v.* Williams, 8 Texas, 255.)

It is also insisted, on behalf of appellant, that the judgment should be reversed, because the law by which the tax demanded of him is levied violates Article 12, Section, 19 of the Constitution.

The first clause of this section of the Constitution is in these words, viz. : " Taxation shall be equal and uniform throughout " the State." This, we agree with appellant, is the dominant provision in the section, and must be observed and respected in the levy of all taxes for general purposes of revenue of either class referred to in a subsequent part of the section. But, nevertheless, it must not be supposed that this uniformity and equality can be of pefect logical exactness and mathematical accuracy. Evidently, in many instances, approximate equality in apportioning its burthen is all that, from the nature of the tax, it is possible to attain. If there is such equality and uniformity as conforms to the standard provided in the Constitution, or reasonably deducible from it; or such as comports with recognized precedents, and long and well-established legislative usage, and judicial sanction, it is is all that can be required, though on abstract reasoning it may not be found in entire accordance with a strictly literal and technical rule of uniformity, and may bear, to some extent, in individual instances, with unequal weight. For example, the constitutional rule of equality and uniformity, in respect to taxes on property, is in proportion to its value, though, in fact, unquestionably it often operates very unequally, and bears much heavier upon the owners of some kinds of property than it does upon others. So also the constitutional rule for capitation taxes is that of individuality, without discrimination in respect to its burthen. It is likewise quite evident, that the equality and uniformity which is re-

quired, is not applicable to the different classes of taxes as a whole; but to each particular character of tax, which the Legislature may levy, must be applied the rule of uniformity and equality applicable to its class. There can most assuredly be no standard of uniformity and equality applicable alike to an *ad valorem* and occupation tax, or one *per capita* and such as may be levied on incomes.

The particular question for our determination in this case is, whether the law levying the occupation tax for which this suit is brought, violates the constitutional requirement of equality and uniformity, in a tax levied upon persons pursuing any occupation, trade or profession. What rule of practice can be found which is strictly applicable to such a tax? Surely it is not that of a definite sum to be paid by every one upon whom it is levied. Scarcely one could be devised more unequal or less uniform for the just and fair apportionment of its burthen among those upon whom it is imposed. A tax thus levied which would be ruinous upon one occupation, would be the merest trifle on another. The same might also be the result if no discrimination could be made between parties engaged in the same general class of occupation. A just and reasonable discrimination in the levy would seem to approach nearer an uniform and equal apportionment of the burthen of the tax among those upon whom it is levied than any other. As the Constitution has laid down no rule by which the uniformity and equality it requires is to be secured, it is the duty of the Legislature to ascertain and determine how it may best be accomplished.

It has not been made to appear to the court, that it has failed to do so by the law levying occupation taxes. Unless it had, we cannot say the law is in violation of the Constitution. It conforms, with but slight and not very material deviations, to long and uniform usage in the levy of taxes of this character, under our former Constitutions containing the same restriction as these which it is supposed to violate. And it is but reasonable to hold, that these provisions were retained in the present Consti-

tution in view of their receiving the same practical construction as had been previously given them.

There is no error in the judgment, and it is affirmed.

Affirmed.