Ex Parte W. E. Williams.

*No. 488.  Decided November 19.*

1. **Occupation Taxes — Lawyers — Constitutional and Statutory Law.**—Article 8, section 1, of the Constitution, provides, that "the Legislature may impose occupation taxes both upon natural persons and on corporations other than municipal doing business in this State, * * * except that persons engaged in agricultural and mechanical pursuits shall never be required to pay an occupation tax." By article 110 of the Penal Code it is provided, that any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of taxes so due, and not more than double that amount. *Held,* that said article 110 is constitutional, and that under its provisions lawyers may be legally prosecuted and fined for refusing to pay an occupation tax and take out a license before engaging in and pursuing the practice of the law.

2. **Lawyers — Neither Constitutional nor Public Officers — Not Exempt from Taxation Because Part of the Judicial System.** — Attorneys at law are not, in the sense that they are part of the judicial system of the State, constitutional officers. All constitutional officers are limited as to their terms; the office of an attorney is for life; and attorneys are not regarded as public officers, for their duties appertain only to the courts in which they are authorized to practice. But even conceding them to be officers, that would be no ground for exempting them from taxation, the State having the right to tax the salaries or compensation of its officers. And because the legislative department might cripple or destroy the judicial by imposing a prohibitory tax upon the practice of the law, is no reason or valid argument against the imposition of a reasonable occupation tax, since it will not be presumed that a co-ordinate department of the government would thus abuse its power.

3. **Depriving Accused of Right of Counsel—Bill of Rights, Article 1, Section 10, Constitution.**—There is no force in the proposition that by the imposition of an occupation tax some defendant may be deprived of counsel. Such a plea is personal, and could only inure to the benefit of a defendant who has actually been deprived of counsel by reason of the tax. The provision in the Bill of Rights, that the accused "shall have the right of being heard by himself or counsel, or both," was provided, not to act upon contingencies, but upon actual occurrences.

4. **Uniform and Equal Taxation.**—A tax is equal and uniform where all the persons in the same trade, calling, or profession are taxed alike.

5. **Impairment of Vested Rights — Receipt for the Tax.**—The requirement of the statute making it obligatory upon a previously licensed attorney that he shall, before pursuing his practice, obtain another license, is not the impairment of the original contract by license permitting him to practice. To tax the employment of a vested right has never been held to impair it; and though a license be a vested right, yet unless there is something in the privilege by which the State has relinquished the right of taxation, it is presumed to be accepted subject to the power of the State to impose upon its exercise a share of the public burdens. The license to pursue the occupation is not a technical "license" to practice law; it is simply a receipt for the occupation tax.

6. **Case Disapproved.** — The proposition asserted in Languille v. The State, 4 Texas Court of Appeals, 312, that a lawyer's license is a naked privilege, revokable at pleasure by the State, is disapproved.

In this case the relator, who was a practicing attorney of the State of Texas, was arrested under a writ issued from the County Court of Tarrant County, to answer to a prosecution pending against him for unlawfully engaging in the occupation of practicing law without having first paid the tax and obtained a license therefor. ⸱He applied to the county judge for a writ of habeas corpus, which was refused; whereupon he made application to one of the judges of the Court of Criminal Appeals, who granted him a writ of habeas corpus, making it returnable to the next Tyler Term of the court. The facts upon which relator based his right to the relief prayed for are fully stated in the opinion of the court.

*Byron Johnson* and *James S. Davis*, for relator.—We do still claim that the act levying an occupation tax "impairs the obligation of a contract." This was decided in Languille v. The State, 4 Texas Court of Appeals, 318, but is not sound law.

We admit that the Legislature has the power to tax, and that it is unlimited in extent, unless prohibited by the Constitution, or unless it interferes with other departments of the government.

We admit that as a general rule the power of the Legislature operates upon all persons and property, and that under that general power it can tax lawyers, unless they are officers of court, or unless there is something in the State Constitution to exempt lawyers from that general rule or power of taxation.

We admit that under article 8, section 1, of the Constitution of 1876, the Legislature has the right to impose occupation taxes, both upon natural persons and upon corporations; but we say, that the Constitution must be taken as a whole; that this section must be taken in connection with other sections of the Constitution; and that if under other sections of the Constitution the Legislature is prohibited from interfering with persons or occupations that would otherwise come within the operation of article 8, section 1, then article 8, section 1, must be construed to confer the power to tax all persons except those exempted by the other sections, and thus reconcile and give full force and efficacy to each section of the Constitution, and let it stand as one grand whole. Now, then, we claim that lawyers are exempt from this tax, and that the Legislature has no power to impose it; because—

The Constitution of 1876, in article 2, section 1, says that the powers of government shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit, the legislative, the executive, and the judicial, and that the powers properly attaching to the one shall not be exercised by the other.

The powers of the three departments of government are not merely equal; they are exclusive; they are absolutely independent of each other.

24 Texas, 317; 9 N. E. Rep., 692; 21 N. E. Rep., 252; 25 N. J. Law Rep., 331; 78 Ill., 261; 15 N. Y., 297; Cool. Const. Lim., 87, 88, 93, 114, 175.

A lawyer is an officer of the court; a part of the administration of justice; holds a public office; a part of the judicial branch of the government.   11 Texas, 298; 2 Cow., 29; 131 Mass., 376; 41 Am. Dec., 239; 20 Am. Rep., 55; 28 Am. Dec., 657; 39 Wis., 509; 22 Wis., 199; 24 Wis., 134.

The question as to whether or not he shall be licensed to practice law is for judicial and not legislative determination. 17 S. W. Rep., 109. And this determination is had upon evidence furnished by him in open court, of his age, qualifications, and good moral character. 17 S. W. Rep., 109.

He can only be removed by order and judgment of the court for "professional misconduct."

He is required to take the oath of office prescribed by the Constitution, article 16, section 1, to support the Constitution of this State and the United States.

The order of the court admitting an attorney to practice is in the nature of judgment.   61 Cal., 122.

The Legislature can not take the power of examination and passing upon the qualifications of an applicant to practice law away from the court.   39 Wis., 509; 22 Wis., 199; 24 Wis., 134.

Summary jurisdiction over attorneys is sufficiently accounted for by the necessary and inherent control vested in them over the conduct of their own officers.   1 Am. and Eng. Encyc. of Law., p. 944, sec. 3.

If an attorney can be taxed at all, then the remedy for the collection of the tax is by judgment and execution, and not by fine and imprisonment.   42 N. W. Rep., 913; 85 Tenn., 325; 13 S. W. Rep., 75; 6 La. Ann., 515; Cool. on Tax., 83–86; Burr. on Tax., 504; 3 Am. and Eng. Encyc. of Law, 735; 105 U. S., 460.

Article 110 of the Penal Code, assessing fine for following occupation without paying tax, takes away a right given under a judgment of court, is an exercise of judicial power, deprives him of a right otherwise than by a judgment of court for "professional misconduct," and violates article 1, section 10, of the Constitution of 1876, that gives the right to every person charged with crime to be heard by himself or counsel, or both.   17 S. W. Rep., 109–115.

The law requiring the license and levying the tax is unconstitutional and void.

*R. L. Henry*, Assistant Attorney-General, for the State.—Can the Legislature of Texas authorize the levying of an occupation tax upon lawyers? The above query is the only question to be decided in this case.   This court is called upon to annul one of its well considered cases.

Article 8, section 8, of the Constitution, provides, that " the Legislature may impose occupation taxes both upon natural persons and upon

corporations other than municipal doing any business in this State. * * * Persons engaged in mechanical and agricultural pursuits shall never be required to pay any occupation tax.''

Section 2 of the same article provides that the taxes shall be equal and uniform upon the same classes.

The Act of the Twenty-first Legislature, page 24, provides, that ''from every person practicing law, and from every conveyancer or other person drawing deeds or other legal instruments for pay, $5.''

The Legislature has imposed the occupation tax on lawyers in pursuance of an express provision of the Constitution clearly delegating such power, although such delegation in the Constitution was not necessary, for unless the power was prohibited in the Constitution it inhered in the Legislature by reason of our form of government.

On the other hand, from the very indicative fact that the people in their Constitution expressly exempted the mechanical and agricultural pursuits from occupation taxes, it is plain that they intended to confirm in the Legislature by organic law the power to levy and collect an occupation tax from every other pursuit, trade, profession, business, avocation, and calling whatever.

In order for this court to hold that the tax in question is invalid, it must indubitably appear that it is in conflict with the Constitution of the United States or the Constitution of the State of Texas. The people in their political capacity have expressly conferred upon the Legislature the power to tax occupations, and in their Bill of Rights have not reserved the slightest inhibition against such power. Cool. Const. Lim., 104, 206; The People v. Draper, 15 N. Y., 532; Const. of Texas, sec. 2 of Bill of Rights.

We notice not only a conspicuous absence of any limitation on the power of the Legislature to levy this tax, but that the people have made express exemptions on this subject by excepting mechanical and agricultural pursuits, thereby embracing lawyers within the class that may be taxed.

The power to impose taxes is one unlimited in force and searching in extent. It reaches to every trade or occupation. It is granted by all, for the benefit of all. It resides in the government as a part of itself. It is essential to the very existence of government. Cool. Const. Lim., 587; McCulloch v. Maryland, 4 Wheat., 416, 428; Bank v. Billings, 4 Pet., 514–516; Western v. Charleston, 2 Pet., 175; Brown v. Maryland, 12 Wheat., 278; Charles River Bridge v. Warren River Bridge, 11 Pet., 420; Nason v. Louisiana, 8 How., 73.

Upon the particular subject of occupation taxes upon lawyers, the following cases are cited sustaining such tax: Languille v. The State, 4 Texas Ct. App., 312; City of St. Louis v. Sternberg, 8 Cent. Law Jour., 8; The State v. Simmons, 12 Mo., 271; City of St. Louis v. Laughlin, 49

Mo., 559; The State v. Gazley, 5 Ohio, 22; Ohio v. Hibbard, 3 Ohio, 63; Ohio v. Poudfit, 3 Ohio, 63; Young v. Thomas, 17 Fla., 170; Jones v. Page, 44 Ala., 68; Cousins v. The State, 50 Ala., 115; Ex Parte City Council of Montgomery, 50 Ala., 486; In re Knox, 54 Ala., 465; Mayor v. Nille, 3 Ala., 157; Mayor v. Hines, 53 Ga., 616; Mayor v. Wright, 54 Ga., 645; Stewart v. Potts, 49 Miss., 749; The State v. Hayne, 4 S. C., 410; Holland v. Isler, 77 N. C., 1; City of Wilmington v. Max, 86 N. C., 88; Cool. on Tax., 388; The State v. King, 31 La. Ann., 201; The State v. Wapples, 12 La., 243; Teid. on Lim. of Police Power, secs. 84, 101; Ould v. City of Richmond, 14 Am. Rep., 189; License Tax Cases, 4 Wall., 152; Weeks on Attorney, sec. 41, p. 79.

It is proper to state that the writer has examined the decisions of nearly all the States, and finds only one decision running counter to the immense flood of decisions holding that lawyers may be taxed, and that decision is not in conflict with the principal question involved in the case in hand. The case referred to is the case known as "License Cases," 8 Heiskell (Tenn.), page 630.

It is also proper to state that this court, in the case of Languille v. The State, 4 Texas Court of Appeals, 312, in an opinion by Judge Ector, decided that this kind of a tax could be constitutionally imposed. The question is, shall the decision in that case stand?

We now come to consider the Tennessee License Cases, the only apparent divergence from the strong line of decisions above quoted, and when these cases are analyzed it may be clearly demonstrated that there is no conflict between them and the occupation tax on lawyers in Texas. It is proper to here state that the Supreme Court of Tennessee at that time, 1875, consisted of six members, and in deciding these cases two of the judges, Turney and Nicholson, held that the right to practice law was not subject to taxation at all. Freeman and McFarland held that the Legislature might levy a tax upon lawyers procuring a license after the levy of the tax, but could not tax those who had already procured a license. They objected to the occupation tax being considered, for the reason that if it was not paid by the attorney he had to apply to the clerk and take out a new license. The other two judges, Deaderick and Sneed, held that the act as it then existed was constitutional and valid in all respects. Thus it clearly appears that four judges unequivocally held that lawyers might be made subject to an occupation tax, but the tax as it then existed in Tennessee did not comport with their views of the proper sort of an occupation tax on lawyers. Judge Freeman said: "The question is not whether the State may not declare the practice of the profession a privilege, and require in the future all who desire to engage in it to pay a license tax, either on receiving such license or to pay an annual tax on the same, but whether the State can declare a privilege which she has already granted, and revoke the license obtained under her authority,

unless the party shall pay for the obtaining of an annual license under the law we are considering. We hold this can not be done without impairing the obligation of a contract, and that it is to deprive a man of the right granted by the State, based on a valuable consideration paid by the lawyer in more or less toil and labor given to the acquirement of the requisite qualifications. In the case before us, a license had been granted upon a good and sufficient consideration in accordance with law. The question in the case of the lawyer is, whether after having obtained the grant he can be again called on to be relicensed, and required to pay again for that which he already holds from the State, or be deprived of its enjoyment." Judge Freeman further says: "It is proper to add, that under this view of the case the lawyer may be taxed as such, and his right or franchise pay, as other valuable property or franchise, its due proportion of the burdens of the State according to its value, to be ascertained in such manner as the Legislature may deem best. The result is, that the lawyer may be taxed—that is, his privilege may be taxed as property, but his license can not be revoked. That this privilege already granted can only be taxed on its value as other property, but that his granted privilege can not be granted in the future, because the effect of this is to revoke that already granted. We need scarcely say that this does not affect in any way the terms on which the Legislature may grant licenses in the future to persons seeking the privilege."

Again, relator contends that he is a part of the judicial department of the State, being an officer of the court. That to require him to pay an occupation tax would be depriving some person charged with crime of the right of being heard by counsel, as vouchsafed by article 1, section 10, of the Constitution.

Is this contention sound? Who can interpose this objection? The criminal, after he has been deprived of counsel, in order to procure a reversal of his case, or the lawyer who refuses to pay his tax, although no person charged with crime may ever have been deprived of his counsel? When the accused is deprived of an appearance by counsel, then his cause will be reversed, not because lawyers are taxed, but because he has been deprived of a right grounded in the Bill of Rights.

When the tax amounts to a prohibition against the practice of law, the presumption is absolute that the courts will disregard the tax altogether, and permit the accused to be represented by counsel, and the people will remedy the matter at the ballot box. On this point Judge Deaderick said, in the Tennessee Tax Cases, 8 Heiskell, 660, 661: "We are not to presume that a co-ordinate power of the government would abuse its power by imposing a tax upon the lawyer that would operate as an inhibition upon the practice of his profession, or that it would so tax land or other property as to practically destroy its value or confiscate it; nor is it necessary in this case to discuss the question as to how far, if at all, the courts

could interfere, if a system of legislation for such purposes and binding to such results were adopted. Abuses of this character are so improbable that the remedy, then in the hands of the people, in the frequently recurring elections, would be speedily applied."

*Byron Johnson* and *James S. Davis* filed the following motion for rehearing, together with an able and elaborate argument:

Comes now W. E. Williams, the relator in the above cause, and moves the court to reconsider its judgment refusing to discharge the relator in said cause, rendered by this court on the —— day of November, 1892, and to grant relator a rehearing in said matter, upon the following grounds, to-wit:

Because he says article 4665 of the Revised Statutes, imposing an occupation tax upon lawyers, together with articles 4666, 4668, 4668c, 4668d, sections 1 and 2, of the same code, upon the same subject and in pari materia, and article 110 of the Penal Code, making it a penal offense to pursue the profession of law without taking out a new license each year therefor, and paying a tax as a condition precedent to the issuance of such several licenses, is unconstitutional and void, and conflicts with the Constitution of the State of Texas and with the Constitution of the United States in their following provisions:

1. Article 8, section 1, and article 3, section 48, of the Constitution of the State, authorizing the Legislature to impose occupation taxes upon all natural persons and corporations other than municipal doing business in this State, and prohibiting the Legislature from levying any tax or imposing any burdens on the citizen except for the purpose of revenue.

2. Article 1, section 16, of the State Constitution, which provides, " that no bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made," in that it impairs the obligations of all contracts made between attorney and client before the payment of the so-called occupation tax by the attorney, and because said statutes are retroactive and ex post facto as to the law license granted to members of the bar prior to the passage of said article of the Penal Code making it a criminal offense to follow the profession by virtue of the original license granted by the court, without paying a royalty or tax on such original license, by purchasing a county and State license every year in addition to the original license.

3. Article 2, section 10, Constitution of the United States, which provides, that no State shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, for the specific reasons stated in the last foregoing subdivision of this motion.

4. Article 2, section 1, State Constitution, which provides, that the powers of government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body

of magistracy, to-wit, those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted; in that the Legislature, by enacting said statute, assumes judicial power, takes away the constitutional powers of the courts to examine and pass upon the fitness and qualifications of applicants to become members of the bar of the court, and transfers the civil rights, immunities, and privileges granted by the court to members of the bar to another person, not a lawyer or a member of the bar, by reason of his purchase at forced sale of the occupation tax receipt of the lawyer or of the lawyer's license, obtained from the tax collector.

5. Article 5, section 25, of the State Constitution, which provides, " that the Supreme Court shall have power to make rules and regulations for the government of said court and the other courts of the State, to regulate proceedings and expedite the dispatch of business therein;" under which constitutional power so granted, the Supreme Court of the State has made rule No. 106 for the government of District Courts of the State; which rule provides for admission to membership of the bar by the District Courts and by the Supreme Court, upon application made direct to said courts, upon examination of such applicant by the court touching his eligibility and qualifications for the office of an attorney of the court, which rule is now in force and full effect in this State.

6. Article 8, section 2, of the State Constitution, which provides, that " all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax;" in that said enactment as to the occupation tax upon lawyers creates a taxation which is unequal and not uniform for a just and fair apportionment of its burdens among those upon whom it is imposed, and no just and reasonable discrimination in the levy is made or allowed between persons engaged in the same general class of occupation.

7. Article 1, section 19, of the State Constitution, which provides, " that no citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land;" in that said statutes take away the property, civil rights, and privileges of the lawyers granted by judgment of the court which granted his license and made him an officer of the court for life or during good behavior, of which rights and privileges he can not legally be deprived, except by judgment of the court, revoking or cancelling the license so granted for professional misconduct.

8. Article 5, amendments to the Constitution of the United States, which provides, " that no person shall be deprived of life, liberty, or property, without due process of law;" for the reasons stated under the last preceding subdivision of this motion.

9. Article 1, section 10, State Constitution, which provides, "that in all criminal prosecutions the accused shall have the right of being heard by himself or counsel, or both;" in that said occupation tax statute deprives the lawyer himself of his right to be heard by counsel, he being the accused, under article 110 of the Penal Code, and also of his right to appear for the accused in all other cases of prosecution.

10. Article 1, section 13, of the State Constitution, which provides, "that all courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law;" in that said statutes complained of attempt to and do take away the right to practice a profession, which has already been licensed by a court of competent jurisdiction.

11. Article 1, section 18, of the State Constitution, which provides, "that no person shall ever be imprisoned for debt;" in that article 110 of the Penal Code authorizes the conviction and imprisonment of attorneys for nonpayment of a tax upon their law license, which is a debt due to the State by attorneys.

12. Article 5, section 1, of the State Constitution, which provides, that "the judicial powers of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commissioners Courts, in courts of justices of the peace, and in such other courts as may be provided by law;" in that the Legislature, by said enactments complained of, assumes judicial power conferred upon said courts by the Constitution, deprives the Supreme Court and the District Courts of their jurisdiction, and taxes the constitutional means that the State employs to exercise its constitutional powers.

13. Because lawyers, in their professional being, are not natural persons nor corporations, as provided in that section of the Constitution authorizing the levy of occupation taxes, but are officers of the court and artificial persons, not subject to the occupation tax requirements; and the enumeration of the kinds of persons and corporations that may be taxed excludes all others not so specially enumerated in the Constitution.

Upon each and all of said grounds, relator prays that he be granted a rehearing in said cause.

This motion was overruled without an opinion.

SIMKINS, JUDGE.—Relator, a practicing attorney of the State of Texas, charged upon affidavit and complaint with the offense of unlawfully engaging in the occupation of practicing law without paying the tax due thereon, was arrested on the 19th of September, 1892, under a warrant issuing out of the County Court of Tarrant County.

On the 20th of September, 1892, relator presented his 'petition for habeas corpus to the county judge, who refused to grant the writ. An application was then made to one of the judges of this court, who granted

the writ, returnable before this court at this term. The petition sets up all the facts necessary to the determination of the cause. It admits that petitioner is a duly licensed attorney of the State, and engaged in the practice of his profession; that the occupation tax was levied; that he had failed to pay said tax; but denies his liability to pay an occupation tax, upon the following grounds:

(1) That having been regularly admitted and qualified as an attorney at law, he became an officer of court, and part of the judiciary of the State; and the levy of said tax is in violation of section 1, article 2, of the Constitution, which forbids one department to interfere with the powers of the others.

(2) Because said tax violates section 10, article 1, which provides that the accused shall have the right to be heard by himself or counsel, or both, and this tax, by disfranchising counsel, may operate against that right.

(3) Because said right violates section 1, article 8, in not being equal and uniform.

(4) Because article 110, Penal Code, is unconstitutional, in that it prohibits the practice of law, unless the attorney, already licensed under the judgment of the court, should procure a new license from the county clerk, thereby impairing the obligation of a contract and interfering with a vested right.

The relator was prosecuted under article 110, Penal Code, which reads: "Any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of taxes so due, and not more than double that amount."

1. The first ground has been so earnestly pressed, both in oral argument and brief, that we will consider it at length. If relator expects to escape the taxing power of the State, he must show clearly his constitutional right so to do. In speaking of the power of taxation, Mr. Cooley declares it is one so unlimited in force and searching in extent that courts scarcely venture to assert it is subject to any restrictions, except such as rest in the discretion of the authority which exercises it. *It reaches to every trade or occupation*, to every object of industry, use, or employment. Cool. Const. Lim., ch. 14, p. 587.

The right of the State to tax professions and occupations, unless there is some *special constitutional prohibition*, seems to be generally conceded. Tied. Lim., sec. 101, p. 292; The State v. Hayne, 4 Rich. (S. C.), 403; Ould v. Richmond, 23 Grat., 469; Commonwealth v. Moore, 25 Grat., 951; Cousins v. The State, 50 Ala., 113; Stewart v. Potts, 49 Miss., 749; Morrill v. The State, 38 Wis., 428; Young v. Thomas, 17 Fla., 169.

Is there any special constitutional inhibition against taxing lawyers? Article 8, section 1, of the Constitution, provides that the Legislature may impose *occupation* taxes both upon natural persons and corporations

other than municipal doing business in this State.     \*  \*  \*  Persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax.

It is obvious from the express terms of the Constitution that the only exemptions from the all-pervading power of taxation are the agricultural and mechanical pursuits; and under the familiar rule of construction, expressio unius est exclusio alterius, the occupation of a lawyer would be subject to taxation.

But it is claimed that there is an implied exemption from this tax in favor of lawyers, arising from the fact that as officers of the court they are a part of the judicial system of the State, and if the right to tax be conceded the Legislature could tax them out of existence. The right to tax implies the power to destroy. It could thereby greatly impair or destroy the judicial department. Now, in the first place, it can not be contended that lawyers are constitutional officers. All terms of office not otherwise fixed by the Constitution are limited to two years. Sec. 30, art. 16. The office of an attorney is for life. They are not regarded as public officers, for their duties appertain only to the courts in which they are authorized to practice. Ex Parte Garland, 4 Wall., 333; Ex Parte Law, 35 Ga., 285; Ex Parte Yale, 24 Cal., 241.

But, conceding them to be officers, still that would be no ground for exemption from taxation. The proposition so strongly relied on by counsel, "that the State can not tax Federal agencies," has no application here. Mr. Cooley says: "The United States may tax the salaries or compensation of its own officers, and the State may tax those of the State officers, though neither can tax the compensation received by the officers of the other." Cool. Tax., 391. But, in the second place, the contention that the Legislature may cripple or destroy the judicial department is more plausible than sound. We certainly are not to presume that a co-ordinate department of the government would abuse its power by imposing a prohibitory tax on the practice of law. The objection goes to the existence of the power, rather than to any probability of its exercise. It is, indeed, an objection that could be urged against any exercise of the taxing power. Thus, the Legislature ought not to have the power to tax land, for fear it might confiscate; nor personal property, because the tax imposed might exceed its value; nor any occupation, business, or pursuit, because they could be taxed out of existence, and the livelihood of many be destroyed. The answer to all such objections is to be found in " the law and order instincts" of the people, and their capacity for "self-government." In the language of Chief Justice Marshall: " The only security against abuse lies in the structure of our government, and the influence of the constituency over the representatives." He says the people of a State give their government a right to tax themselves and their property, and prescribe no limit, as the exigencies of the government can not

be measured or limited, resting confidently on the interest of the legislator, and on the influence of the constituency over the representative.  McCulloch v. Maryland, 4 Wheat., 428.

But this contention of an indirect crippling of the judicial department by the imposition of a small tax on lawyers grows very tenuous when we think how directly the same result may be accomplished if the Legislature was so disposed.  The license of an attorney grows out of the requirement of the legislative act.  It is not granted to him simply as a personal privilege, but also as a protection to the community from the evils resulting from a want of professional qualifications.  The same public policy requires there should be licensed preachers, physicians, teachers, and other professional occupations.

Now, if the Legislature, intending to destroy the legal class, was to minimize, or even repeal, all requirements for professional learning, and allow any one who desires so to do to argue cases in court, all licenses would ipso facto become nugatory, and cease to give any distinctive standing to their holders.  In Fletcher v. Peck, 6 Cranch, 136, Judge Marshall declared that the question, how far the Legislature—the law-giving power—may involve every other power in cases where the Constitution is silent, has perhaps never been, and never can be, definitely settled.

Again, if the possibility of abuse is an argument against the power, the Legislature might impose a heavy tax upon litigation, and thereby strike directly at the usefulness of the courts and the business of the lawyers; or again, the Legislature might fail to make an appropriation for the support of the judiciary, and thereby suspend the operation of that department, which would have no power to compel the Legislature to levy any tax or make any appropriations for their benefit.  But there is no danger of any such revolutionary emergency.  The people know how to govern themselves and uphold their government.  The ballot, that voices the will of the people, guards their most sacred rights, and tempers legislative acts with conservatism.  We can safely assert, the legal profession will be the last in this government to be endangered.  In every period of our history its members have been, as they always will be, honored and trusted more than any other class by the people; and we may say, with just pride, they have not been undeserving of this confidence.

2.  There is certainly no force in the proposition that by the imposition of this tax some defendant may be deprived of counsel.  As is well said by the Assistant Attorney-General in his able brief in this case:  "The presumption is absolute, that all good citizens will obey their State's laws, and pay the taxes imposed.  There will always be lawyers who obey the law, and pay their occupation taxes.  The person accused of crime will always be within reach of lawyers in a position to defend him by reason of having paid

their tax. Until the criminal can show that he has actually been deprived of legal counsel by reason of this occupation tax, the lawyer can not interpose this plea, that can only inure to the benefit of the defendant. It is a defense peculiarly personal, and this court would not declare the occupation tax law unconstitutional on the ground that some criminal might be deprived of counsel by reason of the law, although no such case arose, or ever will arise. This contention is utterly without foundation, for the reason that this provision was put in the Bill of Rights not to operate upon contingencies, but upon actual occurrences; and we have none such here. Many reasons could be urged against this position, but it is deemed so frail that it is not necessary to deal with it further than to draw a plain parallel. We might with equal propriety charge the Legislature with murder because some person gets snake bitten, and can get no whisky to drink for it, and dies on account of the Legislature imposing an occupation tax on liquor dealers, as to say that a criminal is deprived of the right of appearing by counsel on account of the Legislature placing an occupation tax on lawyers; or might, with the same propriety, accuse the Legislature with murder because some persons die on account of a tax on traveling physicians. The cases are about on a par." See Tax Cases, 8 Heisk., 660.

3. The objection that the tax is not equal and uniform is not tenable. The rule is, that taxation will be equal and uniform if all persons in the same calling, trade, or profession are taxed alike. Albrecht's case, 8 Texas Ct. App., 226; Texas Banking and Ins. Co. v. The State, 42 Texas, 640; Tied. Lim., sec., 101, p. 282; Cool. Const. Lim., 128, 138; Hodgson v. City of New Orleans, 21 La. Ann., 301.

4. That in requiring a new license it impairs the obligation of a contract. We do not agree to the proposition asserted in the Languille case, 4 Texas Court of Appeals, 312, that a lawyer's license is a naked privilege, revocable at pleasure by the State. We think there is no question that a lawyer holds his license during good behavior, and can only be deprived of it for misconduct, ascertained and declared by a judgment of the court, after opportunity to be heard has been afforded. Ex Parte Garland, 4 Wall., 333. But to tax the employment of a vested right has never been held to impair it, or interfere with its exercise. The question before us, then, is not whether defendant shall be deprived of the right to practice law by forbidding the exercise of the right, or by annexing conditions impossible of performance, as in the Garland case, but whether, having been licensed and permitted to practice, he may be taxed for the privilege granted by the State; for, though a license be a vested right, yet, unless there is something in the privilege by which the State has relinquished the right of taxation, it is presumed to be accepted subject to the power of the State to impose upon its exercise a share of the public burdens by way of taxation. Bank v. Billings, 4 Pet., 553.

This question has been repeatedly before the courts of the country, and, with but a single qualified exception, they have declared that the practice of the legal profession is subject to an occupation tax, like any other occupation. In the leading case of Ould v. Richmond, 23 Grattan, 464, the court says that while the lawyer could not be deprived of his right except by the judgment of a court, it was also a valuable civil right and privilege, to which were attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the State. Weeks, Attys. at Law, sec. 41; Tied. Lim., 101; The State v. Hayne, 4 S. C., 410; Jones v. Page, 44 Ala., 658; Cousins v. The State, 50 Ala., 113; In re Knox, 64 Ala., 465; Mayor v. Hines, 53 Ga., 616; Wright v. Mayor, etc., 54 Ga., 645; Holland v. Isler, 77 N. C., 1; Wilmington v. Macks, 86 N. C., 88; The State v. King, 21 La. Ann., 201; The State v. Wapples, 12 La. Ann., 343; Young v. Thomas, 17 Fla., 170; Ohio v. Gazley, 5 Ohio, 22; The State v. Hibbard, 3 Ohio, 63; The State v. Poudfit, Id.; City of St. Louis v. Laughlin, 49 Mo., 559.

Neither do we see any objection to the requirement by the statute of a license to be issued to attorneys who propose to practice law. This license, issued by the county clerk, is not issued to any one who may apply for it and pay the tax. It can not of itself authorize any one to practice law. It is good only in the hands of one who has been previously licensed as an attorney at law. This county clerk's license is simply a convenient method of collecting the tax. Though called a "license," it does not purport to, neither does it, confer the privilege of being a lawyer upon its face. It is simply a receipt for the occupation tax. License Tax Cases, 5 Wall., 472; Brown v. Maryland, 12 Wheat., 555; Ward v. Maryland, 1 Am. Rep., 54; Cool. Const. Lim., 496.

Our conclusion is, that the lawyers of the State are liable to the occupation tax, and we think the County Court did not err in refusing the writ of habeas corpus. The prayer of petitioner is hereby refused, and he is remanded to the custody of the sheriff of Tarrant County.

*Relator remanded.*

Judges all present and concurring