CHARLES W. POTTS ET AL., PROSECUTORS, v. THE CITY
OF CAPE MAY ET AL., DEFENDANTS.

Argued February 20, 1901—Decided June 10, 1901.

1. There is no implied power in a municipal corporation to employ
persons to do work outside of duties germane to the city govern-
ment.

2. The charter of the city of Cape May authorizes the city council to
appoint, beside the officers named in the charter, "such other and
all subordinate officers of the said city as may, in the opinion of
the city council, be necessary for the better ordering and govern-
ing the said city, for the preservation of its health, or for the con-
venience, safety and advantage of commerce and trade." The city
charter also provides that "the city council shall have power to
make and establish such ordinances, regulations, rules and by-laws
*   *   *    as they may deem necessary and proper  *   *   *   for
the prosperity of the said city and its inhabitants, and the same
to alter, modify and repeal." *Held*, that neither of these clauses
of the city charter authorizes the appointment by the city council
of an officer "to properly represent the city, in an advertising or
general way, *   *   *   as a resort before the people at large."

On *certiorari.*

Before Justices GUMMERE and FORT.

For the prosecutors, *J. Spicer Leaming.*

For the city of Cape May, *James M. E. Hildreth.*

For Lemuel E. Miller, *Horace F. Nixon.*

The opinion of the court was delivered by

FORT, J.  The writ in this case brings up two resolutions
of the city council of the city of Cape May.

The first, adopted November 23d, 1899, reads as follows:

"Whereas, we, the city council assembled, feel that the city
of Cape May has not or is not properly represented in an
advertising or general way, and we think it is very important

that our city, as a resort, be placed before the people at large; now therefore, be it

"*Resolved,* That Mr. L. E. Miller be appointed to represent this city, with the understanding that no contracts shall be made whereby the city be obligated without first the consent of this council."

The second, adopted August 7th, 1900, reads as follows:

"*Resolved,* That the city solicitor is instructed and hereby authorized to make the best possible compromise with Lemuel E. Miller for his claim against the city."

Mr. Miller seems to have entered upon the duties designated in the resolution adopted November 23d, 1899, and he subsequently, it appears by the record, presented a bill against the city for services, upon which, it not being paid, suit has been instituted.

It was this claim in suit which the resolution of August 7th, 1900, authorized the city solicitor to compromise.

The prosecutors are residents and taxpayers, and challenge the power of the city council to pass the resolution in question, or to incur expenses of the character indicated. It is conceded that no statute expressly confers upon the city council the power to appoint Miller for such a purpose. The city of Cape May is incorporated by a special charter enacted in 1875. *Pamph. L., p.* 206.

It is undisputed that the city charter does not authorize the appointment of Mr. Miller, unless the authority can be gathered or implied from the language of sections 9 or 20, or both.

That there is no implied power in a municipal council to employ persons to do work outside of duties germane to city government cannot be questioned. It is equally true that municipal powers are to be strictly construed, and where doubtful held not to exist. 1 *Dill. Mun. Corp.,* §§ 89, 91; *Willard* v. *Killingworth,* 8 *Conn.* 247; *Mayor* v. *Yuille,* 3 *Ala.* 137; *Minturn* v. *Larue,* 23 *How.* (*U. S.*) 435; *Ottawa* v. *Carey,* 108 *U. S.* 110.

Is there anything in section 9 or the other provisions of the city charter broad enough to be held to cover the engagement

of a person to advertise the city, in a general way, "as a resort before the people at large?"

Section 9 of the city charter authorizes the appointment of "such other and all subordinate officers of the said city," whether named in the act or not, as "may, in the opinion of the city council, be necessary for the ·better ordering and governing the said city, for the preservation of its health, or for the convenience, safety and advantage of commerce and trade."

In connection with this section of the charter another clause should be quoted, and that is the last clause of section 20, which declares that "the city council shall have power to make and establish such ordinances, regulations, rules and by-laws * * ·* as they may deem necessary and proper * * * for the prosperity of the said city and its inhabitants, and the same to alter, modify and repeal."

We do not think the provisions of the city charter, above quoted, are broad enough to cover an engagement of a party to perform the services indicated by the resolutions brought up by the writ and the bill of Mr. Miller as presented to the city council, as found in the record.

The items of the account rendered by Mr. Miller clearly demonstrate that the duties he did, and which evidently he thought he was engaged to perform, consisted in going to Philadelphia and entertaining persons there, and at Cape May, at dinner and the like. The dinners being given to persons whom he might think able to "boom" the city, or bring custom to it by way of shortened or speedy transportation.

The evidence would seem to indicate that the chief efforts of Mr. Miller were directed to securing advantages for the Cape May and New Jersey Coast Steamship Company, in which he either was then or very soon after largely interested, as his testimony shows.

The power to appoint city officers in the ninth section gives authority to appoint as city officers only such officers as "may be necessary for the convenience, safety and advantage of commerce and trade." That means commerce and trade within the city—the regulation and direction of commercial affairs

within the city; such officials as may be necessary within the city to promote convenience, secure safety and be to the advantage of commerce and trade of the inhabitants. Nor do we think that the general welfare clause in the twentieth section of the charter, which permits the city to adopt regulations, &c., for the "prosperity of said city and its inhabitants," furnishes authority to engage a man for the purposes for which Mr. Miller was engaged. The twentieth section only authorizes the employment of officials "for the preservation of the public health and prosperity of said city and its inhabitants." This clause cannot be extended to embrace .officers, as city officials, who are to be engaged in matters entirely aside from city duties, within the purview of the city government.

If it is within the power of a city council, under a general welfare clause of this character, to appoint and pay an officer to travel, advertise and canvass for custom and sojourners, it is equally within their power to engage in various enterprises which they may think will bring advantage, by way of commerce or trade, to the city.

Such powers will never be inferred; if they are found to exist it must be because of some express provision of the city charter by which they are clearly conferred.

The resolutions brought up are *ultra vires* the municipality, and are set aside.