Anderson, J.
The power to tax rests upon necessity, and is inherent in every sovereignty. It is included in the general grant of legislative power; and reaches, as is said by Mr. Justice Cooley, “ to every trade or occupation ; to every object of industry, use or enjoyment; to every species of possession.” “ If the right to impose the tax exists, it is a right which in its nature acknowledges no limits. It may be carried to any extent, within the State or Corporation which imposes it, which the will of such State or Corporation may prescribe.” Cooley on Constitutional Limitation, chap. 14. p. 479-482. And in the language of Chief J. Marshall, the power of taxing the people and their property is essential to the very existence of government, and may be ligitimately exercised on the objects to which it is applicable, to the ut•most extent to which the government may choose to carry it. The only security against its abuse is the *467 structure of the governmen t itself. The influence of the constituents over their representative is the safeguard against its abuse. McCulloch v. Maryland, 4 Wheat. R. 316-428. It must always be conceded that the proper authority to determine what should, and what should not properly bear the public burden, is the legislative department of the State. This is true not only of the State at large, but it is true also in respect to each municipality, or political division of the State. But these municipal corporations have only such powers as the Legislature of the State confers on them. Cooley 488. And their powers are controlled by the constitution of the United States, and of the State. The restrictions which they impose on the legislative power of the State rest equally upon all the instruments of government created by it. Ib. p. 198.
The powers of public corporations are either express, implied, or incidental. And except as to such powers as are incidental, the charter itself, or the general law under which they exist, is the measure of the authority to be exercised. They have no inherent jurisdiction, like the State, to • make laws, or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority; so that -while the State Legislature may exercise such powers of government, within the description of legislative power, as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and such as are incidental, subject to such regulations and restrictions as are,annexed to the grant. Cooley 192.
With these general principles in view, we will now enquire, whether the charter of the City of Richmond invests the municipality with power to impose the tax *468 complained of. And then if such power is conferred, has it been properly exercised in this case ? By section 69 of the ' charter, sep. acts of 1869-70 p. 188, it is provided that, “For the execution of its powers and duties the city council may raise annually, by taxes and assessments in said, city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the laws of this State and of the United States.” This clause confers the general power of taxation, except only as it may be limited by the laws of the State and the United States; and includes all powers and subjects of taxation. And as to the manner of laying the tax, the council is invested with full disci-etion. And they are authorized to lay a tax to defray the expenses of the city to an amount which they may deem necessary. It seems to me that this language is broad enough to embrace, not only a tax on real and personal property, but every other description of tax which the council might deem necessary and proper, unless its meaning is limited and circumscribed by what follows.
The clauses of this section which follow, are evidemly designed to restrict the unlimited power of taxation given by the clause which has just been recited, to a certain extent, by prohibiting certain taxation which would have been included in the power given, if not thus restricted, to wit, on city bonds, or capital invested in real estate, or in manufactures outside the limits of the city, although the persons engaged in such business or manufactures have a place of business in the city, upon the stock of a corporation and the dividends thereof at the same time, upon any capital, &c., employed in a business upon which a license or other tax is imposed.
*469 These are the only limitations as to the subjects .of taxation; and consequently the power of taxation, on all other persons and subjects of taxation, is given. The other restrictions are, as to the mode or manner of taxation ; and they are, that the tax on property shall be equal and uniform; that capital invested in business operations shall be taxed as other property; and that stocks shall be assessed according to their market value. The power to tax lawyers’ licenses is unquestionably included in the general power given by the first clause of this section; and there is nothing in the clauses limiting and restricting the general power which exempts them. Is there any thing in the next section -which is restrictive of this power?
This section does not employ the language of restriction. It purports to give power, not to abstract or to withhold it. It gives to the city council power to grant or refuse alicense in certain cases, and to tax the license when given. After enumerating several, it adds in general terms, to “ all other business which cannot be reached by the ad valorem system under the qireeeding section,” the council may grant or refuse a license, and tax the same when granted. Lawyers are not named among those to whom licenses may be granted or refused, and taxed, and I think were not intended to be included. They could not be included in a provision to authorize a tax upon an occupation or business to which the council might grant or refuse a license; for a lawyer has obtained his license from the State; and it is not within the province of a municipal council to grant it, or to take it away. Yet, whilst a lawyer’s license authorizes him to practice law in any court of the commonwealth, and it is not in the power of any municipality to deprive him of that right, or to take away his *470 license, it is a civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the State, or by a municipal corporation where he resides and enjoys the privilege. It is a vested civil 1 ight; yet it is as properly a legitimate subject of taxation as property to which a man has a vested right. I cannot perceive that there would not be as much reason for saying that a man’s property is not taxable, because he has a vested right to it, as for saying that a lawyer’s license is not taxable, because he has a vested right to it.
I am of opinion, therefore, that the power to tax a lawyer's license is included in the general power of taxation given by the first clause of § 69; and that it is not taken away by any thing that follows. But, if I were mistaken in this view, and the power is not given by the 69th section, it is given by section 1.
By that section it is enacted that the city of Richmond, for ali purposes for which towns and cities are incorporated in this commonwealth, shall continue to be one body politic, “ and as such shall have, exercise and enjoy all the rights, immunities, powers and privileges, and be subject to all the duties now incumbent and appertaining to said city as a municipal incorporation.” Acts of 1865-66, p. 241. By section 68 of the act passed February 7th, 1866, then in force, it is enacted that, “For the execution of its powers and duties, the council may tax real estate in the city; all personal property therein,” &c.; and by section 69, “ The council may tax the keepers of ordinaries, brokers, lawyers, physicians and dentists,” &c. It appears, then, that the corporation was expressly invested with power to tax lawyers when, and before, the new charter of 1870 was granted; and it is expressly enacted in the 1st section thereof, that the corporation *471 ■•hall have, exercise and enjoy all the powers then appertaining to the city as a municipal corporation. The power of taxation was one of its most important powers, and could be exercised only through the council. This general grant of power seems designed to supply any omissions which might be made in the provisions of the act which was to follow. So that the corporation would be invested, not only with the powers expressly granted therein, but also with all other powers with which it was then invested by previous a^s of the Legislature. I am of opinion, therefore, upon both grounds, that the power to tax lawyers is clearly given by the charter. It only remains to enquire, has it been constitutionally exercised in this case ?
. By an ordinance of the council, the lawyers of Richmond were divided into six classes; and the individuals of each class were assessed -with a certain amount of taxes; and a committee was appointed, charged with the duty of assigning them to the class to which they respectively belonged. It is contended that the council could not delegate this power to a committee.
That the power of taxation is an important and delicate trust confided to the council, and cannot be delegated by them to a committee of their own body, or to any other agency, is unquestionably true. It is a legislative power; and when granted to a municipality, it can only be executed by itself, or by such agencies or officers as the statute has pointed out. So far as its functions are legislative, it rests in the discretion and judgment of the municipal body entrusted with it; and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates, or of any other authority. Cooley, p. 204, 205, and cases cited.
But, was the assignment of the lawyers to their respective classes a legislative function? The enactment *472 that the lawyers should he divided into six classes, and that a tax of so much should be levied upon each indi- ' vidual of a class, was legislative, and was performed by . the council itself. Was the inquiry ás to which class the lawyers should be respectively assigned, and the assignment of. them to their respective classes, a legislative or ministerial act? If it is a legislative function, the commissioners of the revenue, under a delegated authority from the general assembly, have been performing yearly, without question, legislative functions. It is a service which could not be well performed by the legislative body. It is the function of a commissioner, in order to the execution of a legislative act, and is ministerial; and it seems to me, that it was competent for the council to require the service to be performed by a committee of their own body, as well as by a commissioner, or the general assessor. And it was not more necessary that the action of said committee should be reported to the council, and have its confirmation, than that similar duties by a commissioner of the revenue should be reported to and confirmed by the Legislature of the State. But the tax payer should be provided with ample remedies for redress, if he has been aggrieved by the action of the committee. Whether the remedy provided in this case by the ordinance of the council is adequate or not, there is no complaint by the appellees that any injustice has been shown to them; and it is a question, it seems to me, for the council and their constituents, and does not-come within the province of the courts.
It is objected, also, that the mode of ascertaining the class to which the lawyers should be respectively assigned, was uncertain and wholly in adequate to the attainment of justice, and vitiates the whole proceeding. If it be an income tax, as is contended it was designed to be, an *473 assessment was necessary to ascertain what was the income of the lawyer to he taxed. And if it was not an income tax, but a license tax, that is a tax on the civil right or privilege conferred by the license, the tax ought to be proportioned, as nearly as practicable, to the value of that right and privilege. But, exact justice and equality are not attainable, and consequently not required. Cooley on Con. Lim.; Slaughter's case. 13 Gratt, 767; Eyre v. Jacob, sheriff, 14 Gratt., 422, 434, 435; Gilkeson v. Frederick Justices, 13 Gratt. 577.
I do not think it was intended to he a tax on income. The classification of the lawyers shows this. It was intended to he a tax on the civil right and privilege. And it is true that the tax ought to be proportioned, as nearly as practicable, as I have said, to the value of the privilege. Justice and equality, which are of the essence of constitutional taxation, require it. The act of council requiring the assignment of the lawyers into six classes, and the gradation of the tax upon them, according to the class to which they were respectively assigned, shows an intended approximation to equality; and if the assignment is fair and judicious, as nearly attains it as is perhaps practicable in a license tax. It is true that the principle upon which this classification is made by the 5th section of the ordinance, which is in relation to the classification of lawyers, doctor’s, &c., is not in terms expressed. The 3d section in relation to commission merchants, brokers, &c.; the 4th section in relation to “ sellers by wholesale or retail of wine or spirituous liquors;” the 7th section in relation to “agents or sub-agents of any insurance company or office, whose principal office shall be located out of the city;” and the 8th section in relation to “express companies and telegraph companies, having a place of business in the city,” all adopt the method of classification, as in the 5th section; nor in *474 either is the principle expressly stated upon which the classification shall be made. If the tax upon lawyers is unconstitutional and void,-upon this ground it is in all the other cases; which would be disastrous to the financial condition of the city; and a question involving conse.. quences of such ■ moment ought to be well considered by this court, before it declares those ordinances unconstitutional and void, on this ground.
The 11th section provides, “that the committee of finance shall place each person and firm, employed in the trade or business refered to in sections 3, 4, 5, 7, and 8, in the class to which the committee shall be of opinion such person or firm properly belongs, looking to all the circumstances of the case.” How while it is not expressed that the classification shall be made with reference to the value of the civil right or privilege conferred by the license, that, it seems to me is the obvious design > and object of the classification, and would be so understood. For what other object could a classification have been made, than to attain justice and equality as nearly as practicable by levying a tax proportionate to the value of the privilege to the party taxed; and it is to this end that the committee is instructed “ to look to all the circumstances of each case.” It might have been better to have expressed the object and design of the classification as a guide to the committee; but it seems to me it is manifest without being so expressed. And the charter expressly invests the council with full discretion to raise the necessary revenue, by taxes and assessments, “in such manner as they shall deem expedient, in accordance with the laws of this State and the United - States.” I am not aware that these provisions of the ordinance are in conflict with any law of the State or the United States. That the discretion reposed in the committee may be abused is possible; but not more likely, I think, than *475 that the same power might be abused by a commissioner of the revenue. The council having by their act of legislation, required the lawyers to be placed in six different classes, and declared what tax should be paid by the individuals composing each class, directed one of its most important standing committees, the committee of finance, to assign them respectively to such class as they should properly belong. It is fair to presume, that this committee is composed of intelligent, discreet, and trust-worthy gentlemen, residing in different parts of the city, who would be informed as to the relative standing of the lawyers in the city, and the extent of their business, from.their own • observation, and from reputation, and would not be likely to err greatly in their determination as to which class they should be re spectively assigned. I should suppose that there is not an intelligent business man in the city of Richmond, such a one as should be selected as a councilman, and placed on the committee of finance, who, if not sufficiently informed as to the relative practice of every lawyer in the city, could not get sufficient reliable information by inquiry, to enable him to determine, with reasonable accuracy, to which of the six classes he should be assigned, especially after a free interchange of views with the other members of the committee..
It is true, that they might be mistaken in individual instances, which I should think, however, would rarely be the case. But, as such mistakes might occur, a remedy was provided for correcting them, which was applied in this ease'. Row, whether this was the best mode for the attainment of justice in the classification of the lawyers, it is not for me or the court to say. But I cannot perceive that it is obnoxious to the objections urged against it in argument; or especially, that it furnishes ground for avoiding the tax by a judgment of the *476 court. That the confidence reposed in the committee might be abused, is possible. But it is impossible to administer government without reposing confidence in public agents. A reasonable confidence in human agents is essential to society and to the conduct of human affairs ; and a law cannot be said to be unconstitutional because it reposes a confidence in public agents which may be abused.
As before said, there is no complaint that the tax imposed upon the appellees in this case is unequal and unjust. I apprehend the ease was made in order to have an important principle as to the right of taxation settled, for the benefit of all concerned, as well as the immediate parties to this proceeding. It was believed that in this assessment there was an encroachment upon the constitutional rights of citizens; and this proceeding was properly instituted to test the question. From the best consideration I have been able to give the subject, my mind has been brought to a different conclusion. I do not thiuk that the city council have exceeded their powers in the imposition of this tax. I am, therefore, of opinion, to reverse the judgment of the court below.
Moncure, P., and Christian, J., concurred in the opinion of Anderson, J.
Staples and Bouldin, Js, dissented.
Judgment reversed.