[No. 2386]

## IN THE MATTER OF THE APPLICATION OF J. B. DIXON FOR A WRIT OF HABEAS CORPUS.

[183 Pac. 642]

1. LICENSES—CITY OCCUPATION TAX.
> An admission to the bar of a state is a vested and valuable right, but subject to taxation, including a city occupation tax.

2. LICENSES—OCCUPATION TAX—UNIFORMITY—ATTORNEYS.
> A city ordinance, imposing a tax upon the occupation of attorney at law, *held* not in violation of Const. art. 10, sec. 1, providing for an equal and uniform rate of taxation.

3. LICENSES—LICENSE TAX ON OCCUPATION—CONSTITUTIONALITY.
> The imposition of a license tax upon an occupation is not illegal, because not expressly authorized by the state constitution, but is permissible, unless prohibited thereby.

4. HABEAS CORPUS—HEARING ON PETITION.
> On an original petition for habeas corpus by an attorney at law, convicted on failure to pay occupation tax, petitioner cannot be permitted to show that the facts proven on the trial at which he was convicted were not sufficient to constitute the crime charged.

5. HABEAS CORPUS—ORIGINAL PETITION—HEARING.
> In an original application for habeas corpus by one convicted of violation of an occupation-tax law, the court cannot consider the abuse of the lower court's discretion in refusing to grant a continuance of the trial in which the petitioner was convicted, or an objection to evidence as incompetent or the exclusion of evidence offered in petitioner's behalf.

ORIGINAL PROCEEDING in habeas corpus upon petition of J. B. Dixon. **Petition dismissed and petitioner remanded to custody.**

*J. M. Frame* and *J. B. Dixon* (in pro. per.), for Petitioner:

The right to practice law in the State of Nevada, under a license duly issued by the supreme court, is a vested right. The license is a contract in the highest sense, the obligations of which the legislature cannot impair by making additional requirements or by delegating to a municipality the right to impose a license tax. The license is imposed merely for the sake of the revenue to be derived from the tax. In the case at bar, the penal part of the ordinance is essentially an interference with vested rights, is in its nature prohibitive and

in its operation ex post facto. "No state shall pass any law impairing the obligation of contracts." U. S. Const. art. 1, sec. 10. "The office which the party acquires is one of value." Bradley v. Fisher, 13 Wall. 354; In Re Garland, 18 U. S. 370; Pierce v. Carskadon, 16 Wall. 234, 21 L. Ed. 276; Cummins v. Missouri, 4 Wall. 277; Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629; Fletcher v. Peck, 6 Cranch, 87.

The ordinance in question is unconstitutional, in that the tax sought to be imposed is not uniform and equal. (Const. Nev. art. 10, sec. 1.) Even in states where occupation licenses for revenue are allowed, it is necessary that they be uniform and graduated. Ala. Com. C. & I. Co. v. Roysburg, 59 South. 305; Braman v. Alameda, 124 Pac. 243; People v. Wilson, 94 N. W. 141; State v. Doran, 134 N. W. 53; City v. Donoker, 108 Pac. 1086; Sacramento v. Crocker, 16 Cal. 119.

Neither the state nor the city of Reno has any right to levy an occupation tax, unless such right is specifically set forth in the constitution. Const. Nev. art. 10, sec. 1; 6 Am. & Eng. Ency. Law, 925, 931.

The petitioner is entitled to produce evidence to show that the facts proven on the trial were not sufficient to constitute the alleged crime. Eureka Bank Cases, 35 Nev. 80; 1 Bailey, Hab. Corp., p. 87, et seq.

Petitioner was entitled to a continuance, on account of the unavoidable absence of his counsel at the time the case was called for trial. State v. MacKinnon, 41 Nev. 182; Brown v. State, 47 S. E. 543; Boott v. State, 68 S. W. 171; Cornelius v. Commonwealth, 64 S. W. 412.

*L. D. Summerfield,* District Attorney, for Respondent:

"In the absence of any constitutional prohibition or restriction, it is within the undoubted power of the legislature to impose a tax upon employments, occupations, or vocations, or to authorize municipal authorities so to do." 4 Dillon, Mun. Corp. (5th ed.), sec. 1410; 25 Cyc. 599; 3 McQuillin, Mun. Corp. 986; City of Newton v. Atchison, 1 Pac. 288; Pollock v. Farmers' L. & T. Co., 39 L. Ed. 1108; Ex Parte Cohn, 13 Nev. 424.

The right to practice law may be taxed.   6 C. J. 570;
4 Cyc. 898;  4 Dillon, Mun. Corp., sec. 1408.   A munici-
pal license tax may be imposed, notwithstanding that a
state license also is required.   Ex Parte Siebenhauer, 14
Nev. 365.   The ordinances are constitutional.   Gold-
thwaite v. City Council, 50 Ala. 486.

The ordinance does not impair the obligation of con-
tracts nor take a vested right without due process of
law.   Ex Parte Williams, 31 Tex. Crim. 262;  8 Cyc. 938;
Blanchard v. State, 18 L. R. A. 409.   Neither does it
violate the constitutional provision as to uniformity of
taxation.   4 Dillon, Mun. Corp., sec. 1410;  3 McQuillin,
Mun. Corp., sec. 1001;  Ex Parte Robinson, 12 Nev. 263.

The writ of habeas corpus is not intended to have the
force and effect of an appeal, writ of error, or certiorari,
nor is it designated as a substitute for either.   Ex Parte
Smith, 2 Nev. 338;  Ex Parte Winston, 9 Nev. 71;  Ex
Parte Maxwell, 11 Nev. 428;. Ex Parte Davis, 33 Nev.
309;  Ex Parte Breckenridge, 34 Nev. 275.   There is a
well-defined distinction between writs sued out before
and after a final judgment.   21 Cyc. 325, 326.


By the Court, COLEMAN, C. J.:

This is an original proceeding in habeas corpus.

Petitioner was proceeded against before the judge of
the municipal court of the city of Reno, charging him
with violating the ordinance of that city making it a
misdemeanor for attorneys to practice law without pay-
ing a license fee.   Petitioner having been convicted as
charged, it was adjudged that he pay a fine, and in
default thereof that he be confined in jail.   Failing to
pay the fine, petitioner was incarcerated as adjudged.
He now seeks to be discharged upon this writ, alleging
numerous reasons as grounds therefor.

1. The chief reasons urged upon our consideration are
that the ordinance is unconstitutional, in that it is in
violation of a vested right, that it is ex post facto, and
that it deprives petitioner of his property without due
process of law.

Counsel for petitioner cite authorities to the effect that an admission to the bar is a vested property right, and call our attention to what is known as the Lawyers' Tax Cases, 8 Heisk. (Tenn.) 565, as sustaining the contention that a license tax upon an attorney, such as here questioned, is in violation of the constitutional rights of a member of the bar, and is null and void. While counsel for petitioner has filed a very elaborate brief, citing many authorities, and by a process of reasoning satisfactory and convincing to himself of the soundness of his conclusion, the only case cited which sustains the view contended for by him is the Lawyers' Tax Cases, supra. But that case stands alone, and is by a divided court. In a note to Blanchard v. State of Florida, 18 L. R. A. 409, it is said:

"In Lawyers' Tax Cases, 8 Heisk. 565, decided by the Supreme Court of Tennessee in 1875, which case was also reported as Cardwell v. State, in 17 S. W. 109, in advance sheets only and left out of the permanent bound volume, a statute making it unlawful to practice law without payment of a license tax was held unconstitutional; two judges holding that the right to practice law could not be taxed, and two others holding that the practice of law by a duly admitted attorney without payment of the tax could not be made unlawful, while two judges held that the statute was constitutional. The serious division of opinion among the judges of the court much impairs the effect of the decision as an authority, and it is at any rate in conflict with all other cases on the subject."

In Stewart v. Potts, 49 Miss. 749, the Supreme Court of Mississippi disposes of the question, without citing an authority, in the following words:

"The only question made * * * is as to the constitutionality of the tax. This question is considered too well settled to require discussion. This right has been directly exercised by the federal government, and its equivalent has been practiced by this state ever since its organization. The same may be said of every state in

the Union. If the tax is inexpedient, or excessive, the remedy is at the ballot-box."

In Young v. Thomas, 17 Fla. 169, 35 Am. Rep. 93, the court, passing upon the question, observed:

"The plaintiff in this case insists in his bill that the levy of this tax is in derogation of his vested rights as an attorney. In the language of the Court of Appeals of Virginia (Ould & Carrington v. City of Richmond, 23 Grat. [Va.] 469, 470, 14 Am. Rep. 139), 'a lawyer's license authorizes him to practice law in any court of the commonwealth. It is a vested civil right, yet it is as properly a legitimate subject of taxation as property to which a man has a vested right. I cannot perceive that there would not be as much reason for saying that a man's property was not taxable because he has a vested right to it, as for saying that a lawyer's license is not taxable because he has a vested right to it.' The matter of regulating the admission of persons to practice law is the subject of legislative action and control. At common law the courts had no power to admit attorneys or counselors. State ex rel. Wolfe v. Kirke, 12 Fla. 281, 95 Am. Dec. 314. Their duties are of such character that in order to secure proper qualification for their discharge the legislature imposes the duty of examination and determination upon the courts. The only difference between this pursuit and that of any other for which a license is not required is that a qualification looking to competency is required in one, and the right independent of qualification is in the other. Because the law prescribes certain methods by which the existence of the qualification to follow a pursuit is determined, and after determining their existence a general authority to follow such pursuit is granted, gives no greater right to follow that pursuit than exists in any citizen to follow any other legitimate calling or vocation. There is a general right in every citizen to acquire, possess and protect property, and yet in the absence of such constitutional limitation upon the power of taxation, it extends, as is said by Mr. Justice Cooley, 'to

every trade or occupation, to every object of industry, use or enjoyment, and to every species of possession.' The power of the legislature to impose a license tax upon lawyers is affirmed in the following cases:   State v. King, 21 La. Ann. 201; Simmons v. State, 12 Mo. 268, 49 Am. Dec. 131; Stewart v. Potts, 49 Miss. 749; Ould & Carrington v. City of Richmond, 23 Grat. (Va.) 464, 14 Am. Rep. 139; Jones v. Page & Stallworth, 44 Ala. 658."

In Cousins v. State, 50 Ala. 113, 20 Am. Rep. 290, the Supreme Court of Alabama, in sustaining a license tax on attorneys, used the following language:

"But it is contended that the lawyer alone is exempted from this power of regulation by the general assembly. This exemption he derives from the privilege to practice his profession at all, dependent upon his license as an attorney at law.   In the technical sense of the word, the sense in which it is used in the statute, he is no lawyer without a lawyer's license to confer that privilege upon him.   The license of an attorney at law creates his occupation simply.   If he does not engage in its practice, he is not bound to pay the license demanded by the statute. If he does, then he must do so under the law which prescribed the conditions upon which the occupation may be engaged in or carried on.   There is nothing particularly sacred in the profession or business of a lawyer, which puts him above the legislative power to place on his shoulders his just share of the necessary burdens of the state. If his share of this particular burden is unequal, and he complains of it for this reason, it will be removed; but, without this, he has no more right to avoid his duty than the tobacco dealer, the peddler, or the citizen who publishes a newspaper or bakes bread.   The right to regulate the property and the vocations of its citizens by the state is sovereign, and it should neither be abrogated nor abandoned."

The court of last resort of Virginia, in disposing of the question presented in Ould & Carrington v. City of Richmond, 23 Grat. (Va.) 464, 14 Am. Rep. 139, said:

"Yet, whilst a lawyer's license authorizes him to practice law in any court of the commonwealth, and it is not in the power of any municipality to deprive him of that right, or to take away his license, it is a civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the state, or by a municipal corporation where he resides and enjoys the privilege. It is a vested civil right; yet it is as properly a legitimate subject of taxation as property to which a man has a vested right. I cannot perceive that there would not be as much reason for saying that a man's property is not taxable, because he has a vested right to it, as for saying that a lawyer's license is not taxable, because he has a vested right to it."

That great constitutional lawyer and jurist, Judge Cooley, whose word is accepted as of persuasive force in considering such questions, states the rule in the following words:

"Lawyers are subject to such license taxes for practicing their profession as may be imposed by the state and by municipal authorities. The license authorizing them in the first instance to pursue their calling, is an evidence of character and capacity, and carries with it no exemption from taxation by license tax. The profession has no special privilege from that of other occupations. It is true that the right to impose an occupation tax on practitioners of law has been much contested, as depriving the attorney of a vested right, or as impairing the obligation of a contract, or as being, in effect, a tax on the privilege of seeking justice in the courts; but it has, nevertheless, been sustained with only faint dissent."

In Ex Parte Williams, 31 Tex., Cr. R. 262, 20 S. W. 580, 21 L. R. A. 783, it is said:

"But to tax the employment of a vested right has never been held to impair it, or interfere with its exercise. The question before us, then, is not whether defendant shall

be deprived of the right to practice law by forbidding the ·
exercise of the right, or by annexing conditions impossi-
ble of performance, as in the Garland case (4 Wall. 333,
18 L. Ed. 366), but whether, having been licensed and
permitted to practice, he may be taxed for the privilege
granted by the state; for, though a license be a vested
right, yet, unless there is something in the privilege by
which the state has relinquished the right of taxation,
it is presumed to be accepted subject to the power of the
state to impose upon its exercise a share of the public
burdens by way of taxation. Providence Bank v. Bill-
ings, 29 U. S. (4 Pet.) 553, 7 L. Ed. 953. This question
has been repeatedly before the courts of the country,
and, with but a single qualified exception, they have
declared that the practice of the legal profession is sub-
ject to an occupation tax, like any other occupation. In
the leading case of Ould v. Richmond, 23 Grat. 464, 14
Am. Rep. 139, the court says that, while the lawyer could
not be deprived of his right, except by the judgment of
a court, it was also a valuable civil right and privilege,
to which were attached valuable immunities and pecu-
niary advantages, and is a fair subject of taxation by
the state. Weeks, Attorneys at Law, sec. 41; Tiedeman,
Pol. Powers, 101; State v. Haynes, 4 S. C. 410; Jones
v. Page, 44 Ala. 658; Cousins v. State, 50 Ala. 113, 20
Am. Rep. 290; In Re Knox, 64 Ala. 465; Savannah v.
Hines, 53 Ga. 616; Wright v. Atlanta, 54 Ga. 645; Hol-
land v. Isler, 77 N. C. 1; Wilmington v. Macks, 86 N. C.
88, 41 Am. Rep. 443; State v. King, 21 La. Ann. 201;
State v. Waples, 12 La. Ann. 343; Young v. Thomas, 17
Fla. 170, 35 Am. Rep. 93; State v. Gazley, 5 Ohio, 22;
State v. Hibbard and State v. Proudfit, 3 Ohio, 63; St.
Louis v. Laughlin, 49 Mo. 559."

See, also, Lent v. City of Portland, 42 Or. 488, 71 Pac.
645; City of Sonora v. Curtin, 137 Cal. 583, 70 Pac. 674.

The authorities all agree with one contention of peti-
tioner, and that is that an admission to the bar of a
state is a vested and valuable right; but they go a step

further than petitioner, and hold that such vested right should be taxable, and rightly so. Why should a member of the bar who is engaged in the practice of his profession be free from taxation? Should he, merely because he has been adjudged qualified to pursue a certain calling and has acquired a vested right in consequence thereof, be more sacred than the peddler or the merchant? If there should be any preference, we can see no reason why the lawyer should be the privileged one. In his admission to the bar he is favored over the average citizen. He is protected. He is protected, in that no one else can invade the realm until designated by some authority as qualified to do so. But because he is thus favored for life, during good behavior, should that be pleaded as such a vested right as sets him apart from the rest of the world as one immune from sharing the burdens of the government which gives him protection? The man who acquires a right or privilege not enjoyed by all humanity ought to be willing to bear his share of taxation. The courts of the land, with a peculiar unanimity, have held, in no uncertain terms, that he should, and we are in accord with both the conclusions reached and the reasons given therefor.

2. It is next contended that the ordinance is in violation of article 10, section 1, of the Constitution of Nevada, which provides for an equal and uniform rate of taxation. It is not pointed out in just what way the taxation under this ordinance is not uniform. It provides for a graduated rate of taxation, based upon the individual income; and, as said in some of the cases in which this question is considered, it is impossible to attain uniformity to a mathematical exactness. In Ould & Carrington v. City of Richmond, supra, it was observed:

" * * * The tax ought to be proportioned, as nearly as practicable, to the value of that right and privilege. But exact justice and equality are not attainable, and consequently not required." [Citing authorities.]

In Ex Parte Robinson, 12 Nev. 263, 28 Am. Rep. 794,

the court, speaking through Hawley, J., held that the section of the constitution in question did not apply to licenses imposed for conducting any business or profession. To the same effect: Ex Parte Cohn, 13 Nev. 424; City of Ogden v. Crossman, 17 Utah, 66, 53 Pac. 985; Dillon, Municipal Corporations, vol. 4 (5th ed.) sec. 1410; McQuillin, Muncipal Corporations, sec. 1001.

3. It is also insisted that the imposition of a license tax is illegal, because not expressly authorized by the state constitution. Such is not the law. Dillon, Mun. Corp. (5th ed.) sec. 410, says:

"In the absence of any constitutional prohibition or restriction, it is within the undoubted power of the legislature to impose a tax upon employments, occupations, or vocations, or to authorize municipal authorities so to do."

Cyc. states the rule in the following language:

"In the absence of any inhibition, express or implied, in the state constitution, the legislature may, either in the exercise of the police power or for the purposes of revenue, levy license taxes on occupations or privileges within the limits of the state." 25 Cyc. 599.

The same rule is declared in 3 McQuillin, Municipal Corporations, sec. 986.

The Supreme Court of Kansas, speaking through Brewer, J., later one of the great justices of the Supreme Court of the United States, in considering this and other questions raised in this case, said:

"In the absence of any prohibition, express or implied, in the constitution, the legislature has power, either directly to levy and collect license taxes on any business or occupation, or to delegate like authority to a municipal corporation. This seems to be the concurrent voice of all the authorities. In 1 Dillon, Mun. Corp. (3d ed.) sec. 357, note, the author says: 'Unless specially restrained by the constitution, the legislature may provide for the taxing of any occupation or trade, and may confer this power upon municipal corporations.' In Burroughs, Taxation, 148, is this language: 'Where the

constitution is silent on the subject, the right of the state to exact from its citizens a tax regulated by the vocations they pursue cannot be questioned.' In Savings Society v. Coite, 6 Wall. 606, 18 L. Ed. 897, the Supreme Court of the United States thus states the law: 'Nothing can be more certain in legal decision than that the privileges and ·franchises of a private corporation, and all trades and vocations by which the citizens acquire a livelihood, may be taxed by a state for the support of the state government.' Hamilton Co. v. Massachusetts, 6 Wall. 638, 18 L. Ed. 907; Cooley, Taxation, 384–392,· 410. On page 394 the author observes: 'The same is true of occupations; government may tax one, or it may tax all. There is no restriction upon its power in this regard, unless one is expressly imposed by the constitution.' In State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179, Field, J., among other things, speaking of the power of taxation, says: 'It may touch property in every shape—in its natural condition, in its manufactured form, and in its various transmutations; and the amount of taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted—in professions, in commerce, in manufactures, and in transportation. Unless restrained by the constitution, the power as to the mode, forms, and extent of taxation is unlimited.' See, also, the authorities collected in Fretwell v. City of Troy, 18 Kan. 274. Nor does this rest alone upon a mere matter of authority. Full legislative power is, save as specially restricted by the constitution, vested in the legislature. Taxation is a legislative power. Full discretion and control, therefore, in reference to it, is vested in the legislature, save when specially restricted. There is no inherent vice in the taxation of vocations. On the contrary, business is as legitimate an object of the taxing power as property. Oftentimes a tax on the former results in a more even and exact justice than one on the latter. Indeed, the taxing power is not limited to

either property or vocations. It may, as was in fact done during the late war and the years immediately succeeding, be cast upon incomes, or placed upon deeds or other instruments. We know there is quite a prejudice against occupation taxes. It is thought to be really double taxation. Judge Dillon well says that 'such taxes are apt to be inequitable, and the principle not free from great abuse.' Yet, wisely imposed, they will go far towards equalizing public burdens. A lawyer and a merchant may out of their respective vocations obtain the same income. Each receives the same protection and enjoys the same benefits of society and government. Yet the one having tangible property pays taxes; the other, whose property is all in legal learning and skill, wholly intangible, pays nothing. A wisely adjusted occupation tax equalizes these inequalities." City of Newton v. Atchison, 31 Kan. 151, 1 Pac. 288.

4. It is urged that petitioner should be permitted to produce evidence for the purpose of showing that the facts proven on the trial at which he was convicted were not sufficient to constitute the crime charged. To support this contention our attention is called to the Eureka Bank Cases, 35 Nev. 80, 126 Pac. 655, 129 Pac. 308. Those cases do not justify any such contention; and this court, speaking through Hawley, C. J., in Phillips v. Welch, 12 Nev. 158, squarely disapproved of such a practice. The court said: .

"No court can discharge on habeas corpus a person that is in execution by the judgment of any other court having jurisdiction of the subject-matter. * * *"

This statement is reasonable and unanswerable. If any other position be taken, it will lead to interminable litigation, and establish a rule that, in its consequences, if carried to its logical conclusion, will destroy the force of every judgment, until, perchance, the court of final resort has put its stamp of approval upon it.

5. It is also contended that petitioner should be discharged because the trial court abused its discretion in refusing to grant a continuance of the trial of petitioner,

and for the further reason that the trial court admitted, over objection, incompetent evidence, and refused to admit in evidence competent and material testimony offered in behalf of petitioner, "and in various ways prevented petitioner from having a fair and impartial trial." These are matters which a court cannot consider in a proceeding of this character.

Petitioner's brief presents some other points, but they are either disposed of by what we have said, or are so utterly without merit as not to justify specific consideration. The petition should be dismissed, and petitioner remanded to custody.

It is so ordered.