## In Re SCOTT

No. 2864

October 15, 1930.                                          292 P. 291.

*James T. Boyd,* for Petitioner:

*John D. Hoyt* and *John Donovan,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

This proceeding was initiated in this court by petition under the provisions of an act known as the state bar act, approved at the special session of the legislature held in 1928, entitled:

"An Act to create a public corporation to be known as 'State Bar of Nevada,' to provide for its organization, government, membership and powers, to regulate the practice of law, and to provide penalties for violation of said act." Stats. (Special Session) 1928, p. 13 (chapter 13), Stats. 1928–1929.

Frank B. Scott, the petitioner, a duly licensed attorney, applies to this court for a review and reversal of a resolution of the board of governors of the state bar of Nevada, which adopts and approves the findings of the local administrative committee of Washoe County, and its recommendation that the petitioner be suspended from the practice of law in this state for a period of twelve months.

The petition for review is presented under section 26 of the act, which provides, inter alia:

"Any person so disbarred or suspended may, within sixty days after the filing of said certified copy of said decision, petition said supreme court to review said decision or to reverse or modify the same. * * *"

The first question to arise is: What is meant by the term "review" as used in this and other sections of the act? We are in accord with the authorities holding that the supreme court, on review of a decision of disbarment or suspension of an attorney by the board of

governors of the state bar, is not bound by findings or recommendations made by a local administrative committee, nor their adoption by the board of governors, and shall examine the entire record anew to ascertain whether or not any charge has been proven which merits disbarment or suspension, uninfluenced in whole or in part by the action taken by the board or committee. In Re Stafford (Cal. Sup.) 284 P. 670; In Re Shattuck (Cal. Sup.) 279 P. 998; McVicar v. State Board of Law Examiners (D. C.) 6 F. (2d) 33, 35.

In view of the fact that this is the first proceeding of the kind to arise under the state bar act, it is deemed advisable to devote extended discussion to the numerous questions of law and fact involved for the benefit of later cases brought here for review.

The petitioner makes a number of contentions assailing the constitutionality of the state bar act, summarized as follows:

1. That section 2 of the act is in violation of section 1, article 8, of the constitution, relating to the creation of corporations by special acts.

2. That the act is in violation of section 8, article 1, of the constitution, relative to "due process of law."

3. That the act is in violation of article 3, sec. 1, of the constitution, relating to the distribution of the powers of government.

4. That the act, as a whole, is inimicable to the fundamental principles of our government, in that by legislative enactment the members of the legal profession are compelled to accept membership in a corporation in order to follow the calling of their choice.

Section 2 of the act reads as follows:

"There is hereby constituted a public corporation to be known as 'State Bar of Nevada,' hereinafter designated as the state bar, which shall have perpetual succession and a seal and may sue and be sued, and which may, for the purpose of carrying into effect and promoting the objects of said corporation, enter into contracts and acquire, hold, encumber, dispose of and deal in and with real and personal property. The term of

existence and the powers of said corporation may be changed or terminated at any time by an act of the legislature of the State of Nevada."

■■ It is contended on the part of the petitioner that this section is in violation of section 1, article 8, of the constitution, which reads:

"The legislature shall pass no special act in any matter relating to corporate powers except for municipal purposes; but corporations may be formed under general laws; and all such laws may from time to time be altered or repealed."

In the early case (1866) of Mayor, etc., of City of Virginia v. Chollar-Potosi G. & S. M. Co., 2 Nev. 86, Justice BEATTY, after quoting this prohibitory provision, said:

"The expression, 'in any manner relating to corporate powers,' is a rather ambiguous phrase, but we think the framers of the constitution meant by that language to prohibit the formation of corporations by special acts. The subsequent language, 'but incorporations may be formed under general laws,' shows that was the meaning intended to be conveyed. Then, to use more appropriate language, the section would read in this way: 'The legislature shall pass general laws for the formation of corporations; but no corporation (except corporations for municipal purposes) shall be created by special act.' "

If this is what the constitution meant to express, as transposed the section corresponds with similar provisions contained in the early and late constitutions of several of the states, as, for example, the constitution of California approved in 1849 provides:

"Corporations may be formed under general laws, but shall not be created by special act except for municipal purposes." Section 31, article 4.

The question for decision is narrowed to that of whether or not the act creating a public corporation to be known as the state bar of Nevada, for the government and regulation of the practice of the law, is within the inhibition interpreted to read:

■■■■■■

"The legislature shall pass general laws for the formation of corporations; but no corporation (except corporations for municipal purposes) shall be created by special act."

The authorities hold that:

"A constitutional provision against the passage of special acts conferring corporate powers applies in strictness only to purely private corporations." 1 Thompson on Corporations (3d ed.), sec. 161.

The state bar act of Nevada is stated in the title, and also in the body of the act, to be "a public corporation." It would seem, therefore, that the foregoing prohibitory provision has no application, for the reason that the provision is held to refer only to private corporations. State Bar v. Superior Court (Cal. Sup.), 278 P. 432, 435.

The state bar act of Nevada is conceded to be an exact reproduction of the state bar act of California. In the case cited, it was held that the regulation of the practice of law as contemplated by the state bar act of California (Stats. 1927, p. 38) is not such a matter of purely private concern as to constitute an attempt to provide for the formation of a corporation, in violation of constitution of California (1879), article 12, sec. 1, which reads:

"Corporations may be formed under general laws, but shall not be created by special act."

The holding is based upon the observations contained in the opinion of Justice Richards to the effect that the body of our citizenry known to the law as "attorneys and counselors at law" form an integral and indispensable unit in our system of administering justice, and without the constant presence and contacts of which courts could not function nor the orderly administration of justice go on. The profession and practice of law, while in a limited sense a matter of private choice and concern in so far as it relates to its emoluments, is essentially and more largely a matter of public interest and concern; the membership, character, and conduct of those entering and engaging in the legal profession have long

been regarded as the proper subject of legislative regulation and control. From these observations, and others pointed out in the opinion, the court concludes that the state bar act is not to be regarded and held as an attempt to provide for the formation of a private corporation.

On the other hand, counsel for petitioner contends that the prohibitory provision that the legislature shall pass general laws for the formation of corporations, but no corporation, except for municipal purposes, shall be created by special act, means and has reference to the creation of corporations for the government of a portion of the state, such as municipalities. We are not in accord with this construction of the provision. Under constitutions which provide that corporations shall not be created by special acts, except for municipal purposes, the term "municipal purposes" within the provision has been held to be a public or governmental purpose, as contradistinguished from private purposes. 1 Dillon, Municipal Corporations (5th ed.), sec. 73. Therefore, the term municipal purposes in its broadest sense is used to include those public corporations, the purpose of whose creation is an instrumentality of the state in the administration of civil government, and not for the regulation solely of the local and special affairs of a compact community.

Under the constitution of California approved in 1849, it was held that a public corporation can be created, not only by the means and in the manner provided by the general law, but also by special act, or by implication of law. People v. Reclamation District No. 108, 53 Cal. 346. The legislature of Nevada has undoubtedly, in numerous instances since the adoption of the constitution of 1864, acted upon the construction that the prohibitory provisions of section 1, article 8, did not constitute a limitation upon its power to create a public corporation by special act in the interests of the public welfare or for the public good.

Our conclusion that the prohibitory provision applies only to strictly private corporations is supported by the objects of the prohibitory constitutional provisions which

are conceded to be to render the formation of corporations convenient and speedy, to secure uniformity in the law and equality of rights, and laws to prevent the legislature from 'corruptly or improvidently granting franchises to particular individuals at the expense of the community in general, and of making all judicial constructions of their powers, or the restrictions imposed upon them, equally applicable to all corporations of the same class. Thompson on Corporations, sec. 162.

Furthermore, we are not prepared to concede that the act creating a public corporation to be known as the state bar of Nevada is a special act within the constitutional inhibition:

"It is true that in the title or body of the act it is not expressly stated in so many words to be a general law, but it is not necessary so to be, if from the content of the act itself it appears that it applies to all of the class of persons with respect to which it purports to legislate, and that as to such classification it is apparently based upon a reasonable distinction." State Bar v. Superior Court, supra.

It is deemed proper to state that in arriving at the conclusion that the corporation created by the state bar act is not within the prohibitory provisions of section 1, article 8, of the constitution, we have considered the Idaho cases Jackson v. Gallet, 39 Idaho, 382, 288 P. 1068; in Re Edwards, 45 Idaho, 676, 266 P. 665. In Jackson v. Gallet it was held that an act creating the board of commissioners of the Idaho state bar, under which the board has perpetual succession, the right to receive and grant property in its name or to purchase or hold property, real or personal, and to have a common seal, created a corporation by special act, in violation of constitutional article 3, sec. 19, or article 11, sec. 2, of the constitution of Idaho. In Re Edwards, supra, it was held that the Laws of 1923, c. 211, as amended by the Laws of 1925, cc. 89, 90, creating a board of commissioners of the Idaho state bar, without the rights incident to those of private corporations, did not create a corporation by special act in violation of the said provision of the Idaho constitution. We do not approve of either the reasoning or

conclusions of the Idaho cases for two reasons: First, the prohibitory provisions of our constitution apply in strictness only to purely private corporations; second, the fact that the Nevada state bar has, for the purpose of carrying into effect and promoting the objects of the corporation, the right to enter into contracts and acquire, hold, incumber, dispose of, and deal in and with real and personal property, does not change the public character and purpose of the corporation and make it a corporation for pecuniary benefit.

■ The petitioner contends that section 26 of the state bar act violates section 1 of article 3 of the constitution relative to the distribution of the powers of the government, in that the section confers upon the board of governors judicial power with respect to the suspension or disbarment of attorneys. Section 26 reads as follows:

"The board of governors shall have power, after a hearing for any of the causes set forth in the laws of the State of Nevada warranting disbarment, or suspension, to disbar members or to discipline them by reproval, public or private, or by suspension from practice, and the board shall have power to pass upon all petitions for reinstatement. The board of governors shall keep a transcript of the evidence and proceedings in all matters involving disbarment or suspension and shall make findings of fact and a decision thereon. Upon the making of any decision resulting in disbarment or suspension from practice said board shall immediately file a certified copy of said decision, together with said transcript and findings, with the clerk of the supreme court. Any person so disbarred or suspended may, within sixty days after the filing of said certified copy of said decision, petition said supreme court to review said decision or to reverse or modify the same, and upon such review the burden shall be upon the petitioner to show wherein such decision is erroneous or unlawful. When sixty days shall have elapsed after the filing of said certified copy, if no petition for review shall have been filed, the supreme court shall make its order striking the name of such person from the roll of attorneys or suspending him for

the period mentioned in said decision. If, upon review, the decision of said board of governors be affirmed, then said court shall forthwith make said order striking said name from the rolls or of suspension. The board shall have power to appoint one or more committees to take evidence on behalf of the board and forward the same to the board with a recommendation for action by the board. Nothing in this act contained shall be construed as limiting or altering the powers of the courts of this state to disbar or discipline members of the bar as this power at present exists."

The contention of the petitioner is that that portion of the foregoing section which provides that "the board of governors shall have power * * * to disbar members or to discipline them by reproval, public or private, or by suspension from practice, and the board shall have power to pass upon all petitions for reinstatement," clearly invests the board of bar governors with powers which are essentially judicial in character. Section 26 is identical in language to that of section 26 of the state bar act of California. In the case of In Re Shattuck (Cal), supra, the court in answer to this contention held that any decision which the board of bar governors may be empowered to make in a proceeding pending before it is merely "recommendatory" in character and the only orders which have the effect of working disbarment or suspension of a person are the final orders of the supreme court, and that the section does not violate article 3, sec. 1, of the constitution relative to the distribution of governmental powers, as the statute does not invest the board with judicial powers. This decision meets with our approval. But counsel for the petitioner contends that in the absence of a petition for review, the action of the board is final and conclusive. Since the petitioner has applied for a review of the findings and recommendation of the local administrative committee of Washoe County, adopted and approved by the board of governors, we are of opinion that we are not called upon to determine the question of whether or not, in the absence of a petition for a

 

review, the action of the board is final and conclusive. This contention will be met and disposed of when the question is raised in a proper case.

■■ The petitioner contends that the state bar act is unconstitutional, in that it deprives the petitioner of his property—the right to practice his profession without due process of law—in violation of both the state and federal constitutions. We are not prepared to concede that the right to practice law is a "property" right. It is held to be a "privilege" subject to the control of the legislature and limited to persons of good moral character, with special qualifications ascertained and certified, as prescribed by law. 6 C. J. 569, citing in support of the text In Re O'Brien's Petition, 79 Conn. 46, 63 A. 777, 780, in which it is well said:

"The inalienable right of every American citizen to follow any of the common industrial occupations of life does not extend to the pursuit of professions or vocations of such a nature as to require peculiar skill or supervision for the public welfare."

The case of Ex Parte Dixon, 43 Nev. 196, 183 P. 642, is cited as an authority in support of the proposition that the right to practice law is a property right. That case simply holds that a license to practice law is subject to an occupational tax created by a city ordinance. But, if for the purpose of the state bar act, the right to practice law is to be regarded as a property right, the statute meets every requirement of the constitution. Provision is made for a full and complete hearing of all complaints lodged against a member of the bar, and for review before the board of governors, coupled with a review by the supreme court. The facts and the law both being subject to review and final decision by the supreme court, we do not consider that the petitioner was denied due process of law. In Re Petersen (Cal. Sup.), 280 P. 124; In Re Edwards, supra; In Re Bruen, 102 Wash. 472, 172 P. 1152; McVicar v. State Board of Law Examiners, supra.

■ The petitioner contends generally that the state bar act, as a whole, is violative of the fundamental

principles of our government in that those engaged in the practice of law are compelled to accept membership in a corporation in order to practice their profession. This contention furnishes the most popular criticism of the members of the profession opposed to the law. As hereinabove stated, the membership, character, and conduct of those entering and engaging in the legal profession has, since the inception of our state government, been regarded as the proper subject of legislative regulation and control; the right to follow any of the common industrial occupations of life does not extend to the pursuit of professions or vocations of such a nature as to require peculiar skill or supervision for the public welfare. In the adoption and approval of the legislation under review, the legislature evidently considered that the time had come in the administration of the law that attorneys and counselors at law, who constitute an integral and indispensable unit in the administration of justice, should be organized as a body politic, with delegated police power subject to the control of the supreme court and the legislature for the benefit of the public welfare in a matter of great public concern.

It is contended that section 34 of the act regarding the procedure adopted for the investigation of complaints made against a member of the bar is illegal in that the administrative committee or board of governors may initiate and conduct such proceeding without the filing or presentation of any complaint informing the attorney complained against of the charges preferred and without trial thereof, in the manner provided by law.

The statute provides that the state bar shall be governed by a board of governors, composed of nine members nominated by petition and elected by ballot of all members of the bar entitled to vote. The statute provides that with the approval of the supreme court the board has the power to formulate and enforce rules of professional conduct for all members of the bar in the state. The board has power to create as many local

administrative committees as it may deem advisable, composed of active members of the bar; and each member of the board of governors is ex officio a member of the administrative committee where he maintains his principal office for the practice of law. The statute makes it the duty of each administrative committee, and it is given the power to receive and investigate complaints as to the conduct of members of the bar, make findings and recommendations and forward its report to the board of governors for action, which may either act upon the report or may take additional evidence or set aside the report and hear the whole case de novo. Section 34 of the act provides, inter alia:

"The board, or any local administrative committee shall, of its own motion and without the filing or presentation of any complaint, or upon any complaint, if a complaint be filed, have power to initiate and conduct investigations of all matters affecting or relating to the state bar, or its affairs, or the practice of the law, or the discipline of the members of the state bar. * * * "

We have had much difficulty in reconciling the foregoing provisions, apparently legislative and judicial in character, with the constitution which provides that the powers of the state government shall be divided into three separate departments—the legislative, the executive, and the judicial — that no persons charged with the exercise of powers properly belonging to one shall exercise any functions appertaining to either of the others. Article 3, sec. 1.

Undoubtedly, under our law the supreme court is the only court which has the power to disbar or suspend an attorney, and for three causes only: First, his conviction of a felony or misdemeanor involving moral turpitude; second, willful disobedience or violation of a court order connected with or in the course of his profession; third, for misconduct in office or for good cause shown. Volume 1, sec. 511, Rev. Laws. It is observed that section 26 of the act closes with this significant statement:

"Nothing in this act contained shall be construed as limiting or altering the powers of the courts of this state to disbar or discipline members of the bar as this power at present exists."

Section 26 forms the basis of this proceeding, and if we are correct in the conclusion that the section is not to be construed as even partially withdrawing from the supreme court its statutory or inherent power to disbar or suspend an attorney, that the board of governors or any local administrative committee's acts in the performance of their prescribed powers relating to the disbarment or suspension of an attorney as merely an "intermediary agency" for the taking of evidence and reporting thereon to this court, their findings or recommendations are merely "recommendatory" and not final and do not and cannot amount to a judgment of disbarment or suspension. The procedure conforms to the common law:

"At common law an attorney was always liable to be dealt with in a summary way for any ill practice attended with fraud or corruption, and committed against the obvious rules of justice and honesty. No complaint, indictment, or information was ever necessary as the foundation of such proceedings. * * * No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding." McVicar v. State Board of Law Examiners, supra.

Furthermore, the state bar act provides that any person complained against shall be given reasonable notice and shall have a reasonable opportunity and right to defend against the charge by the introduction of evidence, and the right to be represented by counsel and to examine and cross-examine witnesses. We interpret the power given the committee or board to initiate and conduct investigations to mean that the investigations are to be simple and informal, but thorough, with the object of ascertaining the truth concerning the matters under investigation. We see no reason for holding the statute illegal because of the power of the board or committee to initiate and conduct investigations without the filing and presentation of a complaint. In

this instance the petitioner was given due notice of the complaints to be investigated and was given a full and fair hearing.

██  It is argued with vehemence that the statute is void, because it authorizes a member of any local administrative committee, or a member of the board of governors, to prefer charges against an attorney, and then to sit as a member of the committee, or board, for the consideration of the charges so preferred. We are not in accord with this contention. The powers conferred upon the board and local administrative committees relate to matters of great public concern, in which the members of the board and committee have no personal interest. They have no greater interest in the result of this proceeding than has any other member of the profession or any other member of the community entitled to protection against unscrupulous lawyers. In Re Edwards (Idaho), supra, citing McVicar v. State Board of Law Examiners, supra, and In Re Jones, 159 App. Div. 782, 145 N. Y. S. 65.

It is argued that this court, upon examination of the evidence produced before the board of governors, and reported to this court for review, should and will conclude that the findings and recommendation of the board of governors are not supported by the evidence. This contention brings us to the review of the charges preferred against the petitioner and the evidence in support thereof.

The record discloses that the local administrative committee of Washoe County, of its own motion, caused to be duly served upon the petitioner written notice informing him that the committee, at the time and place specified in the notice, proposed to investigate complaints as to the petitioner's professional conduct, particularly in regard to the following:

A. False and misleading advertising in the use of the name, "Abbott & Scott" and improper conduct with reference thereto; and

B. The forwarding of improper letters to defendants in divorce actions.

■ The evidence produced before the local administrative committee and reported by the board of governors to this court for action with respect to complaint A stands uncontradicted and admitted by the petitioner. The question for decision is: Is the evidence such as to justify the suspension of the petitioner from the practice of the law in this state for a period of twelve months, or at all? We are of opinion that it does.

The petitioner, as a witness in his own behalf, at one of the hearings before the local administrative committee, admitted that upon his admission to practice in the courts of this state he opened law offices in rooms 306–307, Byington Building, Reno, Nevada; that he published upon one of the doors of the offices, "Abbott & Scott, Attorneys-at-Law," with the name "Frank B. Scott" immediately thereunder; that he made and signed a written application to the Bell Telephone Company to have the name "Abbott & Scott" listed and published in both the general and in the classified business directories of the company, of large circulation. He was furnished by the person in charge of the office of the telephone company their regulation application blank to which he signed the name "Abbott & Scott" by "J. R. Abbott." Pursuant to the application, the name "Abbott & Scott" was published in the telephone directory and in the classified business directory dated May, 1928. Thereafter the petitioner made, signed, acknowledged, and filed for record in the clerk's office of Washoe County the following certificate:

"I hereby certify that under the name of Abbott & Scott, I intend to carry on business as an attorney. That the true and real full name of the person conducting such business is Frank Brettle Scott and that his post-office address is 306–307, Byington Bldg., Reno, Nevada.

"[Signed] Frank B. Scott."

The certificate was filed under the provisions contained in section 1 of the Statutes of 1923, p. 271, c. 156. The petitioner contends that the practice of the law is a "business" within the meaning of the statute. We do·

not deem it necessary in this proceeding to determine whether or not the statute applies to attorneys; the question here is whether or not Mr. Scott was guilty of unprofessional conduct in selecting the firm name, "Abbott & Scott" composed of J. R. Abbott and Frank B. Scott. The petitioner admitted that the name "J. R. Abbott" was fictitious; that he at one time knew a lawyer by that name and thought he could locate him; and that he adopted the name because it harmonized with that of Scott, and that it began with "A." As a witness in his own behalf, he testified, in substance, that he had been an attorney for thirty-two years, a thoroughly ethical one, and when passing on the question as to whether or not he should select the name "Abbott" he was conscious of the Scriptural injunction, "Shun the every appearance of evil," and if his fellow attorneys thought there was anything out of the way in the matter, he would be the last one to do anything that would bring reproach upon his profession. He repented of his error and testified that when his act of selecting the fictitious firm name "Abbott" was criticized as being unprofessional and unethical, it caused him mental worry and great loss of business by publishing and advertising the name in the telephone directory and upon his letterhead; that he blotted out the name "Abbott" appearing on the door of his office and upon his letterhead, and were it possible he would cancel the name "Abbott & Scott" published in the telephone directory.

We have carefully considered the extenuating circumstances which the petitioner has presented to this court, and considering all circumstances have concluded that the petitioner was guilty of misconduct in practicing law under a firm name which included the name of an attorney who was not admitted to practice in the courts of this state, and with whom he had not been associated in practice, and with whom he had no relation. In Re Gluck, 139 App. Div. 894, 123 N. Y. S. 857.

In support of charge B, "The forwarding of improper letters to defendants in divorce actions," there were produced at the hearing before the local

administrative committee two typewritten letters on second paper, signed by the petitioner; one of which was addressed to Mrs. Jessie Sturdevant, 3250 South Thirty - first Street, Lincoln, Nebraska, and the other addressed to Mrs. Julius Posner, 45 Everett Avenue, Celsea, Massachusetts. The letters are of the same tenor, and to avoid extending this opinion of unreasonable length, we shall insert the shorter of the two letters:

"Frank B. Scott, Lawyer
 "550 So. 11th East St.
 "Salt Lake City.       Aug. 10th, 1927
"Mrs. Jessie Sturdevant
 "3250 So. 31st st.
 "Lincoln, Nebraska
"Dear Madam:

"I have been in correspondence with your husband regarding securing a divorce from you. I am aware of the fact of judgment for $75, per month alimony, but if the doctor gives up his position in the U at Lincoln you will never collect any part of that money; he is at the end of his resources now and if you do not fix this up with him he will NOT go back to Nebraska in September and will resign his job and start practice again in another state under an assumed name and you will never collect another dollar of that alimony; in order to do so, you would first have to locate him, find that he was earning money and where he kept it, take a judgment for the amount then due in Nebraska and then sue on that judgment in his new home and if you succeed in getting the new judgment how are you going to collect it. You can't arrest him nor punish him for contempt of court as you could if he were in Nebraska so it is up to you to get him to Nebraska and the only way to do that is to sign the enclosed waiver. If you don't sign it he will go ahead and bring the suit for divorce just the same and will have to serve the papers on you and that will take so much longer that he will not be back in Nebraska in time for the term and will lose his job there; but the divorce will go on just the

same. So if you are wise you will sign the enclosed waiver and I will put through the divorce for him and then he will be back in Nebraska and hold his job and pay you the $75 per month alimony. What do you say?

"Sincerely        Frank B. Scott

"[Signed]   Frank B. Scott"

Upon the hearing Mr. Scott objected to the introduction of both the letters upon the ground that no sufficient foundation had been made for their introduction in evidence, contending that the letters had been obtained by an enemy of his, clandestinely from his private desk and delivered to a member of the board of governors who offered them in evidence, and who participated as ex officio member of the local administrative committee of Washoe County, and upon whose testimony the members of the committee were satisfied that a sufficient foundation had been made for the introduction of the letters in evidence.

We have carefully reviewed the record and conclude that Mr. Scott, by his own testimony, was not prejudiced by the introduction of the letters in evidence. As a witness in his own behalf, he did not deny their authenticity with that positiveness that would make it appear that they were not written or subscribed to by him; the letters speak for themselves, and in our opinion are grossly unethical; they reflect the petitioner's entire misapprehension of the ethics of his high and honorable calling.

We have considered the extenuating circumstances presented by the petitioner, and after giving to him the benefit of every intendment and inference, the benefit of his previous good character and reputation, and the benefit of the attendant degradation and probable effect his suspension from the practice of law at his age will have upon his only means of livelihood, we have concluded that the petitioner should be suspended from the practice of law for the period of one year.

It is therefore ordered that Frank B. Scott be, and he is hereby, suspended from the practice of law in this

state for the period of one year from the date of entry of this order.

DUCKER, C. J.: I concur.

COLEMAN, J., dissenting:

I will not delay a determination of this matter by taking the time to write an opinion.

Mr. Justice Field, in Re Garland, 4 Wall. 333, 378, 18 L. Ed. 366, in discussing the relationship of attorneys to the court, said:

"Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases."

It being conceded by all courts that an attorney is an officer of the court and that any order disciplining him is judicial in character, it must follow that the act giving the state bar of Nevada absolute power to discipline an attorney is an attempt to confer judicial powers upon such corporation, and to that extent at least it is, in my opinion, null and void under article 6 of our constitution, which vests all judicial power in the courts.

ON PETITION FOR REHEARING

March 25, 1931.

*Per Curiam:*

Rehearing denied.

COLEMAN, C. J., dissenting.